# Bingaman et al. *versus* Hickman et al.

A debtor made an assignment of all his estate, for the benefit of his creditors to assignees. His creditors, believing that it would be to their advantage to carry on their debtor's business, entered into an agreement with his assignees under seal, providing that a committee of three should take charge of the business, receive a stipulated compensation per day for their services, make such purchases of property as were necessary for carrying on the business and pay for the same out of the first money that came into their hands, and after paying all the expenses of the business to pay the remainder over to the assignees to be divided among the creditors as agreed upon in the said contract. The committee did not sign the contract. They took possession of the business, made purchases of property as authorized and carried it on for six months, when afer selling the property, purchased by them at a loss they turned the business over to the assignees, not having made enough to compensate them for their services. They then demanded that the said creditors pay them the amount agreed upon for their compensation and the amount lost by them in the sale of said property. This they refused to do. The committee thereupon brought an action to recover the same. *Held*, reversing the court below, that the members of the committee were agents or employees of the said creditors and were entitled to maintan their action.

February 10th, 1887. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT and CLARK, JJ. PAXSON and GREEN, JJ., absent.

ERROR to the Court of Common Pleas of *Chester county:* January Term, 1887, No. 261.

Covenant by Frederick Bingaman, Emmor B. Cope and Wellington Hickman against Wellington Hickman, M. B. Hickman, Theodore P. Apple, the First National Bank of West Chester, William Hoopes, T. A. Lloyd, A. E. Lloyd Milton Berry and E. T. Cope & Son. The following are the facts of the case as they appeared on the trial:

On March 31st, 1880, Seneca G. Willauer conveyed by deed of assignment all his property, real and personal, to Wellington Hickman and David M. McFarland, in trust for the benefit of his creditors.

Part of the property thus conveyed consisted of a tract of land in West Caln township, Chester county, known as the " Cedar Knoll Kaolin Works," upon which was a mine of kaolin

[Bingaman v. Hickman.]

clay and water power, machinery etc., for washing, pressing and preparing the same for market.    Many of the creditors of the assignor, as well the assignor himself, considered this an exceedingly valuable property, and believed if the mines were operated and works run, they could be made to go far towards paying Willauer's debts, who otherwise would prove hopelessly and disastrously bankrupt.

In deference to this feeling, the assignees by advertisement called a meeting of the creditors.

This meeting appointed a committee to visit the mines and works in company with such experts as they might select, and make report to an adjourned meeting.

At the next or adjourned meeting the committee made report in favor of retaining and operating the works, which report was adopted by the meeting, and upon the assignees declining to undertake the running of the works and mines, the meeting recommended Frederick Bingaman, who was not a creditor of Wilauer's, and Emmor B. Cope and Joseph J. Morris, who were creditors, as a committee to operate the same.

These meetings were attended by both lien and common creditors.    But after the adjournment of the last meeting, at the instance of some of the lien creditors, Wellington Hickman was substituted on the committee in place of Joseph J. Morris, and the following agreement was prepared, which was signed by the assignees and all the lien creditors except-ing one.

Whereas, the creditors of Seneca G. Willauer, deem it advisable to continue in operation the kaolin works of said Willauer for the purpose of liquidating his indebtedness:

And whereas, the undersigned lien creditors and assignees of the said Willauer, being willing that the said kaolin works shall be operated, have entered into the following agreement, for the purpose of carrying out the wishes of said creditors, to wit: The said kaolin works, mines and farm shall be placed in the hands of a committee of three (3), to consist of F. Bingaman, E. B. Cope and Wellington Hickman, who shall have full power and authority to operate the same in such manner as, in their judgment, will be for the best interests of said creditors, and shall not be held responsible for any errors of judgment or losses in the conducting of the business; that said committee are hereby empowered to purchase carts, horses, harness, and such other personal property as may be necessary for conducting the business, and pay for the same out of the first moneys coming into their hands from the sale of kaolin or clay; that said committee shall each respectively have and receive two dollars per day and their traveling expenses for each and every day actually devoted to said business;

[Bingaman *v.* Hickman.]

that, after deducting all expenses, including taxes, insurance, etc., said committee shall, on the first day of October, next, and every six months thereafter, pay over into the hands of the assignees of said Willauer the net proceeds of said business for distribution in manner following: First. The interest due on the mortgage of William Hooper for debt, three thousand dollars, shall be paid. Second. One seventh of the balance shall be paid to Milton Berry, on account of principal and interest of his mortgage debt, five hundred dollars, until the same shall be satisfied in full. Third. The remaining six sevenths shall be paid to the judgment and mechanic lien creditors, according to their priority according to law, until they are paid in full. Fourth. After payment of all lien creditors, distribution shall thereafter be made *pro rata* among the common creditors. It is also further agreed, that the greater part in value or in number of the lien creditors shall, on three months' notice, in writing, to said committee and said assignees have power to revoke this agreement, and they shall also have power to fill any vacancy or vacancies that may at any time occur in said committee. Should said committee or a majority of them, or the lien creditors, as above provided, at any time deem it advisable to discontinue the operation of said kaolin mines and works then, and in such case, they shall give said assignees written notice, who shall as expeditiously as possible proceed to sell said farm, mine and works, and distribute the proceeds thereof according to law. It is also further understood and agreed, that neither the said assignees nor their sureties shall in any way or manner be held responsible for any part or all of said kaolin mines, works, farm or property while the same is in the hands of the said committee, except only for such amount of the proceeds thereof as they may actually receive in cash for distribution

Witness our hand and seals, this 8th day of May, A. D. 1880.

| *Witnesses Present:* | WELLINGTON HICKMAN, [L. S.] |
| | One of the assignees of S. G. Willauer. |
| W. P. Mercer. | D. M. McFARLAN, [L. S.] |
| | One of the assignees of S. G. Willauer, |
| | WELLINGTON HICKMAN, [L. S.] |
| Jos. Hemphill. | M. B. HICKMAN, [L. S.] |
| | THEO. P. APPLE, [L. S.] |
| William Dowlin. | E. THATCHER, Cashier First Nat. Bank of West Chester, [L. S.] |
| H. M. Philips. | WILLIAM HOOPES, [L. S.] |
| | T. A. LLOYD, [L. S.] |
| W. P. Mercer. | A. E. LLOYD, [L. S.] |
| Ida V. Berry. | MILTON BERRY, [L. S.] |
| F. Bingaman. | E. T. COPE & SON, [L. S.] |

Upon the execution of this agreement, and under its provisions, the assignees turned over the kaolin works and mines to the committee who went into possession, purchased horses, carts, harness, tools and other personal property with their own money and operated the works at their own expense for about four or six months or until November, 1880. Finding it impossible to carry on the business at a profit they ceased work, returned the real estate to the assignees, converted the personal property into money and settled an account of their operations, showing a loss of $1,833.62.

The plaintiffs requested the court to charge *inter alia* as follows: 1. The paper writing sued upon is a contract under which the defendants are liable to pay the plaintiffs for their services, at the rate stipulated therein, their traveling expenses, and all moneys paid, laid out and expended by them in carrying on the kaolin works, which the receipts of the business were insufficient to meet.

Answer. This is disaffirmed.

In the general charge the court instructed the jury as follows: I instruct you that, under this agreement, the plaintiffs are not entitled to recover against the lien creditors who signed it, and that, therefore, your verdict will be for the defendants.

Verdict for the defendants and judgment thereon, whereupon the plaintiffs took this writ, assigning for error the answer of the court to their first point and instructing the jury to find for the defendants.

*Joseph Hemphill* and *R. T. Cornwell* (*Thomas S. Butler* with them), for plaintiffs in error.

*Alfred C. Reid* (*Monaghan & Hause, John J. Pinkerton, Thomas W. Pierce, C. H. Hannum, Charles H. Pennypacker* with him), for defendants in error.

Mr. Justice GORDON delivered the opinion of the court, March 14th, 1887.

We have before us a contract under seal, dated May 8th, 1880, entered into by the lien creditors and assignees of Senaca G. Willauer *inter se*, in which it is recited that "the creditors" deem it advisable to continue the Willauer kaolin works for the purpose of liquidating his indebtedness. This recital would seem to embrace all the creditors of Willauer of every class, whether lien or general. We have, however, to do with none but those who executed the contract before us, and who are the defendants in this case, nor, since the instrument is sealed with the seal of the defendants, need we go beyond it in search of consideration for its execution. This contract,

[Bingaman *v.* Hicking.]

after the recital as above stated, proceeds to state that: "The undersigned lien creditors and assignees of the said Willauer, being willing that the said kaolin works shall be operated, have entered into the following agreement for the purpose of carrying out the wishes of said creditors, to wit: the said kaolin works, mines and farm shall be placed in the hands of a committee of three, to consist of F. Bingaman, E. B. Cope and Wellington Hickman, who shall have full power and authority to operate the same in such manner as, in their judgment, will be for the best interests of said creditors, and shall not be held responsible for any errors ot judgment or losses in the conducting of the business; that said committee are hereby empowered to purchase carts, horses, harness, and such other personal property as may be necessary for conducting the business, and pay for the same out of the first moneys coming into their hands from the sale of kaolin or clay; that the said committee shall each respectively have and receive two dollars per day and their traveling expenses for each and every day actually devoted to said business; that, after deducting all expenses, including taxes, insurance, etc., said committee shall, on the first day of October next, and every six months thereafter, pay over into the hands of the assignees of said Willauer the net proceeds of said business, for distribution in manner following," etc. From this agreement we discover that Bingaman, Cope and Wellington were agents or employees of these creditors and assignees, and were to be visited with no manner of personal responsibility to creditors or others so long as they fulfilled their duty to their principals. Nor, by the said agreement, were they to be held for any losses resulting from the management of said business. The plaintiffs, then, were not only the employees of the covenantors, but by the very terms of the contract itself they were to suffer no loss. Yet, in spite of all this, they were treated by the court below not only as principals, but as the only responsible parties, and upon them the whole loss of the venture was imposed.

It is urged, however, that they were to look to the proceeds of the factory alone for reimbursement. We see nothing of that kind in the contract. They were to apply the moneys arising from the sale of the clay to the purchase of such personal property as might be necessary in conducting the business, but how a deficit was to be made up is not stated, and it is a most extraordinary proposition that the plaintiffs, who were mere employees, were to take upon themselves all risks of the business and bear the losses, whilst their employers were to enjoy the profits, if any such there were. We cannot entertain such an exposition of this contract; the defendants must bear the loss resulting from their own undertaking, and

[Otto *v.* Trump.]

must pay the plaintiffs their wages and expenses, and the court below in refusing so to instruct the jury committed a clear error. What we have said sustains both assignments of error, and we therefore

Reverse the judgment and order a new *venire.*