Williams, J.,
There were two important questions on which this case depended on- the trial in the court below. The first was whether the agreement sued on imposed, by its own terms, any liability upon the lien creditors of Willauer who executed it. The other was whether the execution was, as to any one or more of the creditors, provisional merely, and not binding, because one lien creditor had failed to sign it.
The learned judge of the court below rightly held that the first of these questions had been put at rest by the decision of this court in Bingaman v. Hickman, 115 Pa. 424. Whatever the ideas of the hen creditors may have been when the project of working the kaolin mines was first presented to them, we have to deal with the written instrument to which they have put their names.. This is more than a license to work the mines. It is a selection of three men as a committee to represent them ; and it authorizes them to take possession of the mines, to employ men, to purchase horses, carts and other implements, to prepare for market and sell the kaolin, and to appropriate the proceeds in accordance with a scheme of distribution adopted by the lien creditors and made part of their agreement. It *270 further fixes their compensation, and reserves a right to revoke the powers of the committee. This paper may reach beyond the original understanding which prevailed among the lien creditors before its execution, but it speaks in no uncertain tones and was properly interpreted. Bingaman v. Hickman, supra.
W"e inquire next, whether the agreement is binding as between the creditors who signed it and the committee who acted upon the authority it gave them. It is alleged that one or more of those who signed the agreement ■ did so with the understanding that all the creditors were to sign it before its delivery to the committee, and that one, Mr. Wm. Hoopes, said when he signed that he did so with the understanding that all should sign or it was not to be binding on him. Now, it is important to remember that this agreement was primarily an agreement by and between the lien creditors. They agreed with each other that certain things should be done with the real estate on which they all had hens. To accomplish the purpose proposed, they agreed on the persons who should serve upon the committee and on what they should do in furtherance of the common project. Hickman was one of these creditors, favored the scheme, and participated in the conferences which resulted in the execution of the agreement by the lien creditors.' He was also named as one of the three persons to act as a committee on behalf of the creditors as a body.
Whatever conditions the creditors may have proposed in dealing with each other, they delivered the agreement to the committee when it had received the names of all the creditors except one lady. The paper, as it was executed and delivered to the committee, was without condition or restriction of any sort, and authorized immediate work under its provisions. They accordingly entered upon the active prosecution of the business of mining and marketing kaolin from the land bound by the liens of their principals. For more than six months they were notoriously engaged in the business. They employed men, bought horses and carts, raised money to meet current expenses, put their product on the market and gave their personal attention to the operations under them charge. During all this time there was no word of objection or protest, no notice of any verbal conditions affecting the liability of the .persons who had signed the agreement, no suggestion of want of authority on the part of the committee. The lien creditors withheld process in accordance with the arrangement and gave the committee the time necessary to try the experiment fully. Now, when the experiment has been completed and the result is known to be disappointing, the committee, when they ask their principals to reimburse them, are met with the allegation that the agreement which they hold and under which they have acted is of no force because some one or more of the creditors said, when he signed it, that all must sign or he would not be bound.
But the question is not about what the lien creditors of Willauer said to each other while this project was under consider *271 ation, but what did they say to this committee \ What authority was conferred on the committee to enter upon the land of Willauer, bound by the liens of these creditors, and to assume the responsibility of operating the kaolin mines ? The committee answers this question by producing the written agreement, framed, signed and put in their hands by the creditors. This agreement defines their powers and their duties. It is a clear and distinct authority to do what has been done, as the agents and, representatives of those whose names are appended to it. When this was delivered to the ■committee, unless they were at the same time advised that it was not what it appeared to be, and would not be operative until one more name had been put to it, they had a right to take it for what it was upon its face, viz., an unconditional direction to mine and .sell kaolin from the land bound by the liens for the purposes expressed in it. It was not enough to show what had been said ■among the creditors at an earlier stage of the business, though one of the creditors present became one of the committee. The material question is, what was the understanding when this paper was finally delivered 1 There was no evidence showing any notice to or knowledge in any one of the committee that, at the time when it came to their hands, it was not to be understood and acted upon ■as a finished chart of their powers. They at once entered upon the responsibilities it imposed, and no creditor appears to have said one word to warn them of their want of authority during all the time they were engaged in the business.
The learned judge was right in holding that there was nothing in the evidence to relieve against the plain letter of the agreement under which the committee acted.
The judgment is affirmed.