## OHIO VALLEY TRUST COMPANY *v.* WERNKE.

[No. 6,302. Filed June 4, 1908. Rehearing denied October 8, 1908.]

1. PLEADING. — *Complaint.* — *Passenger Elevators.* — *Contributory Negligence.*—A complaint alleging that decedent desired to go from the third to the fifth floor of defendant's building, that decedent called to the elevator operator to stop at such third floor, that the operator checked the elevator, but negligently failed to stop it until it was six inches above the floor, that decedent stepped one foot upon the floor thereof, when such operator suddenly started the elevator with a jerk, throwing decedent into the shaft and thereby killing him, shows that the elevator had stopped when decedent attempted to enter it, and does not show that decedent was guilty of contributory negligence. p. 330.

2. NEW TRIAL.—*Evidence.*—*Elevators.*—*Accidents.*—Evidence showing that a passenger elevator passed up as usual to the third floor, momentarily stopped, and suddenly ascended with unusual speed, the decedent immediately thereafter falling down the shaft, supports a complaint alleging that the operator negligently started the car with a sudden jerk, thereby throwing decedent underneath it into the shaft. p. 330.

3.  TRIAL.—*Instructions.—Elevators.—Carriers.*—An instruction, in an action against the owner of a building for damages caused by a passenger elevator therein, that such owner was liable therefor as a common carrier of passengers for hire, is correct. p. 333.
4.  EVIDENCE.—*Future Advancement and Earning Capacity.—Damages.—Negligence.—Elevators.*—In an action by the father for damages on account of the death of his infant son, caused by defendant's negligence in operating its passenger elevator, evidence that such son was learning the carpenter's trade, and would, within two years, be enabled to earn journeymen carpenters' wages which would be $3.50 per day with 300 working days in a year, is inadmissible. pp. 334, 337. ·
5.  DAMAGES.—*Death of Infant.—Parent's Recovery.*—Damages recoverable by a parent for the death of an infant are such as would compensate such parent only for his commercial or monetary loss by reason of such death. p. 335.

From Superior Court of Vanderburgh County; *Alexander Gilchrist,* Judge.

Action by William Wernke against the Ohio Valley Trust Company, for the death of Edward Wernke, his infant son. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Elmer E. Stevenson,* for appellant.

*James T. Cutler, John W. Spencer* and *John R. Brill,* for appellee.

RABB, C. J.—The appellee brought this action to recover damages for the death of his minor son, alleged to have been occasioned by the negligence of the appellant. The complaint was in one paragraph. Appellant's demurrer to the same was overruled, proper exception reserved, answer of general denial filed, and a jury trial had, resulting in a verdict in favor of appellee, and assessing his damages at $2,845. Appellant's motion for a new trial was overruled, and judgment rendered on the verdict.

The errors assigned in this court call in question the sufficiency of the complaint, and the correctness of the ruling of the court below on appellant's motion for a new trial.

The substantial averments of the complaint are that the

appellant is the owner of a five-story building in the city of Evansville, used as an office building by appellant, and in which offices are rented to tenants. Appellant maintained in said building a passenger elevator for the use of its tenants occupying rooms above the ground floor and persons having business with them. The elevator shaft was enclosed in a wire screen, with a door in the screen, opening into the elevator on each floor of the building, so constructed that it was opposite the door in the elevator cage when the floor of the elevator was on a level with the particular floor of the building, such doors being so constructed that they opened and closed by sliding them back and forth on rollers. The complaint alleges that the elevator should have been so constructed that these doors could be opened only from the inside of the elevator at a time when it was on a level with the floor of the building, and that they should remain closed at all other times, but that the elevator in question was old, worn, insecure and unsafe, in that the doors aforesaid upon being closed by the operator of the elevator would often rebound and remain open after the elevator had passed, and that, instead of running smoothly at a regular rate of speed, the elevator often jerked suddenly and rapidly upward a distance of several feet, or dropped suddenly several feet, and by reason of such tendency it was often impossible for the operator to control the same; that on December 13, 1905, the elevator was in charge of and operated by an employe of the appellant, engaged for that purpose, who was incompetent, inexperienced, negligent and careless in the operation of said elevator, all of which was known by the appellant, and that the appellant negligently selected and employed said incompetent and inexperienced person, and failed and neglected properly to instruct him in regard to his duties in the operation and control of said elevator; that at said time the decedent had occasion to use said elevator to gain access to

some of the offices in said building, and for that purpose took passage on said elevator, and was carried to the third floor of said building, where his business called him; that his business in the building also required him to visit offices on the fifth floor, and that he endeavored to take passage in the elevator, to be carried from the third floor to the fifth floor; that when he reached the elevator for this purpose the door in the cage was standing open; that the operator of the elevator had carelessly left said door open on his previous trip, or, owing to the defective, old, worn and insecure condition of the door, it had rebounded when the operator attempted to close it, and had remained open; that when decedent reached said doorway the elevator was opposite the second floor, coming up; that he immediately called out to the operator of the elevator, and said: "Going up," for the purpose of causing him to stop at the third floor; that the operator heard and understood the signal, and checked the elevator, but, by reason of his incompetency, inexperience and negligence, failed and neglected to bring the elevator to a stop until it had passed about six inches above the level of the floor; that said decedent, having no knowledge of the defective, insecure and unsafe condition of said elevator and of the doors thereof, and of the inexperience, incompetency and negligence of said operator, and having no notice or knowledge of the danger, stepped one foot upon the floor of the elevator; that thereupon said operator attempted to bring the elevator down to a level with the floor, but by reason of his incompetency and inexperience he negligently and carelessly threw the lever the wrong way, or by reason of the defective, unsafe and insecure condition of said elevator and the door thereof, as before set forth, said elevator was caused to jerk suddenly upward with great force and speed a distance of about — feet before said decedent was able to get his other foot upon the elevator; that by reason thereof his body was suddenly thrown backward

and downward under the elevator and into the shaft below; that he was thrown violently to the bottom of the shaft a distance of — feet, and instantly killed.

The only point made against the sufficiency of this complaint is that it affirmatively shows that the decedent was guilty of contributory negligence in attempting to 1. enter the elevator when it was in motion. Authorities are cited to support the contention of the appellant that an attempt upon the part of one to enter a passenger elevator when the same is in motion is contributory negligence as a matter of law. Conceding this to be true, we think the complaint in question does not show that the decedent attempted to enter the elevator when it was in motion. The averments of the complaint upon this subject are that the "deceased called out to said Wilson and said: 'Going up,' for the purpose of causing him to stop at the third floor and take him up; that Wilson heard the signal and checked the elevator, but, by reason of his incompetency, inexperience and negligence, failed and neglected to bring the same to a stop until it had passed about six inches above the level of the floor; that said Wernke * * * thereupon stepped one foot upon the floor of the elevator," etc. It sufficiently appears from these averments of the complaint that the decedent stepped upon the elevator when it had been brought to a stop six inches above the level of the floor, and not while it was in motion.

Among the reasons assigned for a new trial is the insufficiency of the evidence to sustain the verdict, the appellant's contention being that the evidence affirmatively shows the decedent to have been guilty of contributory negligence in that he met his death while attempting to get into the elevator while the same was in motion. It is agreed that the decedent was killed by being thrown from the elevator cage, when he was in the act of boarding the same, in such manner that he fell from

the cage, and underneath the same, down the shaft. Both sides agree that it was an upward movement of the elevator that threw the decedent, the appellant contending that the evidence shows that he attempted to board the elevator while the same was going up, and that the movement of the elevator at the time had the effect of causing the accident. Appellee contends that the elevator was either brought to a standstill, or so nearly so that it was apparently safe for one to attempt to board it; that it would not have been unsafe, and the injury would not have happened, if it had not been for the action of the person in charge of the elevator; that when the decedent attempted to enter the elevator the operator so used the lever by which its movement was controlled as to give it a sudden and violent jerk upward, thereby throwing the decedent out of the elevator and down the shaft. The only eyewitness to the movements of the unfortunate lad as he attempted to enter the elevator was the appellant's witness, the young man who at the time was operating the elevator, and whose negligence, it is charged by appellee, caused decedent's death. This witness testified, with reference to the accident, that when he was on the ground floor a call came for him to go to the fifth floor, and that while going up, in answer to this call, he saw the decedent when his range of vision reached above the third floor, and heard him say: "Going up." He then says: "I tried to stop the elevator. He [meaning the decedent] stepped one foot on the moving car. He then threw his weight on that foot and pulled the other one off of the floor, and he fell." The car moved, witness thought, two and one-half feet above the floor before he brought it to a stop, and the decedent fell from the car before it came to a stop. W. S. Perrett, a witness for the appellee, testified that at the time the accident occurred he was standing by the elevator shaft on the second floor at the dividing line between the two elevators. When the elevator passed up it was moving at the

usual rate of speed. It stopped momentarily at the third floor, even with the floor, as near as witness could tell from where he stood. After it stopped he noticed that it started up more quickly than he had observed its moving before. There was an object came out from beneath the car. Observing closely, as the object passed him, he saw that it was a human body, the head much lower than the feet. It was while the car was moving that the body fell.

From these circumstances the jury might well have found that the boy's death was caused by the negligent act of the operator of the elevator in suddenly starting the same upward at a rapid rate of speed, while the boy was in the act of entering the car. It was not conclusively bound to accept the testimony of the operator of the elevator. His testimony was not consistent with that of the witness Perrett, who said that the car started up with unusual speed, and while it was moving the body appeared falling from beneath the car, clearly indicating that it must have been thrown from the car when it started up, and not before it stopped, and the very circumstances of the accident are not consistent with the operator's story. He says that when he saw the boy, while the floor of his car was still several feet from where the boy stood, he endeavored to stop the car at the third floor, but could not do so until the car had passed about two and one-half feet beyond the level of the floor. If this were so, necessarily the car would have been moving at a comparatively slow rate of speed when it reached the floor where the boy stood, and when the witness claims the boy attempted to board it while in motion. It seems to us that if this were so, the boy would not have been turned almost a somersault, and thrown head first under the car and down the shaft, but would necessarily have been thrown back upon the third floor. The manner in which he fell shows that he was acted upon, not by some slowly moving force, but by some agent powerful enough to turn him almost a complete somersault, and to

throw him practically head first into the shaft underneath the car. These circumstances furnish sufficient evidence to support the verdict.

Complaint is made of the eighth instruction given the jury at appellee's request, which is as follows: "A company operating a passenger elevator in its office building, for the use of its tenants and their patrons, is a common carrier of passengers for hire, and as such is required to exercise the most perfect care of prudent and cautious men, and its undertaking and liability to its passengers goes to this extent, that, as far as human foresight can reasonably go, it will transport them safely. It is not liable for injury happening from sheer accident or misfortune, when there is no negligence or fault, and where no want of caution, foresight or judgment would prevent the injury, but it is liable for the smallest negligence in itself and its servants. It is also responsible for defects in the vehicle which it furnishes, which might have been discovered by a proper examination." The question presented by this instruction is whether the owner of a building, of the kind and used for the purpose the building referred to in this case is shown to have been, who maintains and operates in such building a passenger elevator, for the use of his tenants and the public who choose to use the same, is, so far as those who ride in the elevator are concerned, a common carrier of passengers for hire. While there may be some conflict in the authorities upon the subject, the decided weight of authority supports the affirmative of this proposition, that they are to be treated as common carriers of passengers, and we see no just ground for any distinction between the rules relating to the degree of care required of those who operate such means of transit and any other carriers of humankind. All the reasons which underlie the strict rule of care required of common carriers of passengers in general apply with equal force to those who operate passenger elevators in large buildings

used by tenants. This rule is well sustained by the following cases: *Treadwell* v. *Whittier* (1889), 80 Cal. 574, 22 Pac. 266, 5 L. R. A. 498, 13 Am. St. 175; *Mitchell* v. *Marker* (1894), 62 Fed. 139, 10 C. C. A. 306, 25 L. R. A. 33; *Hartford Deposit Co.* v. *Sollitt* (1898), 172 Ill. 222, 50 N. E. 178, 64 Am. St. 35; *Becker* v. *Lincoln Real Estate & Bldg. Co.* (1903), 174 Mo. 246, 73 S. W. 581; *Springer* v. *Ford* (1901), 189 Ill. 430, 59 N. E. 953, 52 L. R. A. 930, 82 Am. St. 464; *Goodsell* v. *Taylor* (1889), 41 Minn. 207, 42 N. W. 873, 4 L. R. A. 673, 16 Am. St. 700.

Appellee testified that he was the father of the decedent, who was fourteen years, nine months and twenty days old at the time of his death, and was then engaged as a messenger boy for the district telegraph company; that he earned a salary of $16 per month, and earned something beside his salary; that witness's business was that of a job carpenter; that the boy was learning the carpenter's trade under witness; that in two years more he would have been able to earn a journeyman carpenter's wages. Witness was then permitted, over the objection and exception of the appellant, to testify that the wages of a journeyman carpenter was $3.50 per day, and that such a carpenter ordinarily worked 300 days in the year. The action of the court in overruling appellant's objection to this evidence is made one of the grounds of appellant's motion for a new trial. The ground of the objection to this evidence is that it was indefinite and uncertain, and it is contended that the admission of the evidence constitutes reversible error. The sole object to which this evidence could have been addressed was the subject of damages. Conceding that the evidence in this case, as we think it must be conceded, is sufficient to establish a liability on the part of the appellant for the death of the decedent, it remains for the jury to assess the amount of appellee's recovery, and to fix this assessment is an important and difficult problem.

The recovery under the law must be the actual monetary loss sustained by the parent on account of the death of the decedent. Nothing is to be allowed on account of the parents' grief and anguish; their disappointed hopes in the death of a loved and promising child; their loss of the comfort and companionship of an affectionate and dutiful son; nothing in the way of punishment to the defendant for the carelessness that has resulted in such a sad catastrophe; nothing that is of a speculative or uncertain character. The damages are to be assessed from a purely commercial standpoint, the same as though they had arisen from a breach of contract, and not from a tragedy, and to make this assessment accurately, giving to the plaintiff and taking from the defendant what, under the law, is justly due from the one to the other, is a delicate task for either court or jury; and however fair, just and intelligent jurors may be, and however clear their conception may be of their duty as jurors, they are but human, with human impulses and human sympathies, and the tendency to include in the assessment of damages the grief and disappointment of the parents of the deceased child is almost irresistible. These natural difficulties in the way of a fair assessment of damages to the defendant in actions of this character ought not to be enhanced by the admission of evidence that would furnish the jury ground to allow damages upon a speculative and uncertain basis.

In the case of *Brown* v. *Chicago, etc., R. Co.* (1854), 64 Iowa 652, 21 N. W. 193, which was an action to recover damages for the death of a locomotive fireman, evidence was admitted, over the defendant's objection, that firemen, when capable, were sometimes employed as engineers, and when so employed received an increased pay for their services. The court say in deciding upon the competency of such evidence: "In our opinion it was not competent. In determining the damages which the estate of a decedent will

sustain in consequence of his death, it is proper to consider his calling at the time of his death, his ability, the amount of his earnings, and the like circumstances; and the estimate should be made with reference to such facts as actually existed at the time of his death, and such as it is reasonably certain would have occurred in the future, but for his death. Plaintiff's intestate was not an engineer at the time of his death. It is not claimed that he possessed the skill requisite for that employment, and whether he ever would have acquired that skill was uncertain. The evidence should, therefore, have been excluded.''

In the case of *Hesse* v. *Columbus, etc., R. Co.* (1898), 58 Ohio St. 167, 50 N. E. 354, the supreme court of Ohio, say: ''Against the objection of the defendant the trial court permitted witnesses to testify that the plaintiff's intestate was in the line of promotion when he received the fatal injuries. The jury were otherwise fully informed as to the intestate's habits, health, position and capacity to earn. These and other like circumstances constituted the existing facts from which the jury were to determine the amount of damages which should be assessed. The evidence to which the objection was made was introduced to show a supposed probability that his capacity to earn would have become greater in the future. It started an inquiry which could have no other effect than to consume time unduly, and to introduce speculative considerations into the assessment of damages.'' To the same effect is the case of *Chase* v. *Burlington, etc., R. Co.* (1888), 76 Iowa 675, 39 N. W. 196; *Richmond, etc., R. Co.* v. *Elliott* (1893), 149 U. S. 266, 13 Sup. Ct. 837, 37 L. Ed. 728; *Central Foundry Co.* v. *Bennett* (1906), 144 Ala. 184, 39 South. 574; *Colorado Coal, etc., Co.* v. *Lamb* (1895), 6 Colo. App. 255, 40 Pac. 251; *Richmond, etc., R. Co.* v. *Allison* (1890), 86 Ga. 145.

We think that this evidence was clearly incompetent. The question as to whether the deceased ever would have be-

come a journeyman carpenter was a matter of pure
4. speculation; whether, if he did become a journey-
man carpenter, the wages of journeymen carpenters
would continue to be $3.50 per day in the future was en-
tirely speculative, and equally so was the question whether
journeymen carpenters would continue to find employment
for 300 days in the year. We think the court committed an
error in admitting this evidence.

One of the grounds of the motion for a new trial is that
the damages assessed by the jury are excessive. They were
fixed by the jury at $2,845. Exactly what basis the jurors
estimated the damages upon, we have no means of know-
ing. It may be that they based their estimate and as-
sessment of damages upon this incompetent evidence. We
think the error is one that requires the reversal of the
judgment.

Many other questions are presented by the record in this
cause, but as they are of such a character as not to be likely
to arise upon another trial, we do not decide them.

Judgment is reversed, with instructions to the court be-
low to grant a new trial.

Roby, J., absent.