Dr. Kareem ABDULGHANI, Plaintiff,

v.

**VIRGIN ISLANDS SEAPLANE SHUTTLE, INC., Defendant.**

**Civ. A. No. 1987/156.**

United States District Court,
D. Virgin Islands,
Division of St. Croix.

Nov. 3, 1989.

Gerald T. Groner, Thomas Alkon, Gordon C. Rhea, Christiansted, St. Croix, U.S. Virgin Islands, for plaintiff.

John K. Dema, Christiansted, St. Croix, U.S. Virgin Islands, and David N. Zeehandelaar, Bolger, Picker and Weiner, Philadelphia, Pa., for defendant.

## OPINION

BROTMAN, District Judge (Sitting by Designation).

Defendant Virgin Islands Seaplane Shuttle, Inc. has moved *in limine* to exclude the testimony of plaintiff's business valuation expert, Arnold S. Tesh. Because this court finds that the factual foundation for the testimony is woefully inadequate, and that plaintiff's future business plans regarding his development of a free-standing urgent care clinic on St. Croix were extremely speculative, the court will grant defendant's motion *in limine* to exclude testimony regarding the valuation of the clinic.

## I. FACTS AND PROCEDURE

Plaintiff is a medical doctor who allegedly suffered physical and psychological damage as a result of the crash of a seaplane owned and operated by Defendant Virgin Islands Seaplane Shuttle, Inc. ("defendant"). The defendant has conceded liability. Immediately before the crash, plaintiff was employed in several areas of the medical profession. Plaintiff was employed as an emergency room physician by the Government of the Virgin Islands earning wages of approximately $37,000.00. He also worked as a physician to the Herbert Gregg Nursing Home and the St. Croix Methadone Treatment Program, earning another $27,000.00. Additionally, plaintiff had a private medical practice with profits ranging from a 1983 loss of $7,272.00 to a 1986 profit of $29,168.00.

Plaintiff also maintains that, prior to the crash, he had initiated steps to open a private urgent care/walk-in clinic on St. Croix. As a result of the injuries received in the crash, plaintiff maintains he is permanently disabled from practicing medicine.

The firm of Arnold S. Tesh Advisors of Washington, D.C., was engaged to value plaintiff's planned clinic. Plaintiff intends to present testimony that the clinic would have returned $260,000.00 annual wages to plaintiff in its second year of operation, bringing the value of his lost earnings from the clinic, reduced to present value, to $8,458,012.00.

Defendant argues that the evidence should be excluded for three primary reasons. First, defendant maintains that the faulty methods used to determine the value make the testimony not credible. The faulty methods include erroneous determination of the number of potential patients, proposed fees, and collection of fees, and the omission of an evaluation addressing the feasibility of establishing a clinic of this type on St. Croix. Defendant argues that the "new business rule" requires exclusion of testimony regarding the valuation of a speculative business venture. Additionally, defendant contends that, given the method of valuation, the valuation can establish only the profits of the clinic, not the loss of earning capacity of the plaintiff. Finally, defendant maintains that Mr. Tesh is not qualified to render an opinion, given his lack of relevant education, training, experience, skill, or knowledge.

Plaintiff contends that Mr. Tesh is qualified, and his valuation method and materials were acceptable, and were in fact corroborated by Dr. Austen, the Administrator at St. Croix Hospital. Plaintiff then maintains that the "clinic" is merely an extension of his private practice, not a separate business endeavor, making the "new business rule" inapplicable here.

## II. DISCUSSION

In personal injury cases, most state courts exclude evidence as to the injured party's intention to enter an occupation or business other than that engaged in at the time of the injury to show loss of future income because such evidence is too speculative. *See Lippard v. Houdaille Indus., Inc.,* 715 S.W.2d 491 (Mo.1986); *Christou*

*v. Arlington Park–Washington Park Race Tracks Corp.*, 104 Ill.App.3d 257, 60 Ill. Dec. 21, 432 N.E.2d 920 (1982); *McAlister v. Carl*, 233 Md. 446, 197 A.2d 140 (1964); *Valley Transportation Sys. v. Reinartz*, 67 Ariz. 380, 197 P.2d 269 (1948); *United R. & Elec. Co. v. Riley*, 109 Md. 327, 71 A. 970 (1909); *Ohio Valley Trust Co. v. Wernke*, 42 Ind.App. 326, 84 N.E. 999 (1908). *See generally* 23 A.L.R.3d 1189 (1969).

Absent a contrary local law or statute, Virgin Islands law incorporates the principles enunciated in the restatements of the law approved by the American Law Institute, pursuant to 1 V.I.C. § 4 (Supp.1989).[1] *Skeoch v. Ottley*, 377 F.2d 804, 810 (3d Cir.1967). The relevant section of the Restatement (Second) of Torts provides:

> When the tortfeasor has prevented the beginning of a new business ... all factors relevant to the likelihood of the success or lack of success of the business or transaction that are reasonably provable are to be considered, including general business conditions and the degree of success of similar enterprises. Because of a justifiable doubt as to the success of new and untried enterprises, more specific evidence of their probable profits is required than when the claim is for harm to an established business.

Restatement (Second) of Torts § 912 (1979).

The Court of Appeals for the Third Circuit has recognized that economic testimony, although admissible, must have the proper foundation and sufficient factual predicates to support future earnings calculations. *Benjamin v. Peter's Farm Condominium Owners Ass'n*, 820 F.2d 640, 642 (3d Cir.1987). In *Benjamin*, the Third Circuit remanded for a new trial where the District Court of the Virgin Islands admitted testimony of an economic expert on plaintiff's loss of future earnings that was calculated from figures based on plaintiff's personal beliefs. The Third Circuit noted that its precedents required

more than speculative opinion when determining damages for prospective earnings loss; the precedents required a "sufficient factual foundation" before testimony could be submitted to the jury. *Id.* (citing *Walters v. Mintec/International*, 758 F.2d 73 (3d Cir.1985); *Gumbs v. International Harvester, Inc.*, 718 F.2d 88 (3d Cir.1983)). The Third Circuit held that the factual predicate for the testimony in *Benjamin* was merely speculative because the basis for the expert's estimate of post-injury earning capacity was his questioning the plaintiff "how much did he feel he would earn" in the future. The Third Circuit reversed the district court's denial of defendant's motion for a new trial and remanded for a new trial solely on the damages issue.

Defendant asserts that the methods used by plaintiff's expert, Mr. Tesh, were faulty, making the factual predicates that support Mr. Tesh's future earnings calculations too speculative to permit admission of his testimony. First, defendant points out that, in calculating the potential number of patients to be served by such a clinic, Mr. Tesh interviewed Dr. Underwood, a former director of the St. Croix Hospital Emergency Room. Dr. Underwood estimated the average number of patients per week at the emergency room to be 700, and that approximately one-third of these patients would use plaintiff's proposed clinic (approximately 233 patients). However, Dr. Underwood is not a hospital administrator, nor does he keep records of the number of patients. Thus, his estimates of the number of patients, and the number who might use plaintiff's proposed clinic, are pure speculation. Additionally, the contention that Mr. Tesh "knew personally of the over-burdened work load of the doctors at the hospital based upon witnessing strikes by the hospital doctors" is not a factual basis for estimating the number of potential patients at the proposed clinic and has no relevance whatsoever in calculating damages. Mr. Tesh's estimate is further

---

**1.** 1 V.I.C. § 4 (Supp.1989) provides: "The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary."

discredited by the report of Lloyd Austin, the St. Croix Hospital Administrator, which indicates that the actual number of emergency room patients per week was 445 patients. Additionally, the deposition of Dr. Jacqueline B. Hoop, Assistant Commissioner of the Department of Medical Services of the Virgin Islands Government, indicates that the current medical facilities on St. Croix are *under-utilized,* making estimates of the number of patients using the clinic, as opposed to existing facilities, questionable. Deposition of Jacqueline B. Hoop, at 23–24. Thus, the factual predicate for the number of potential patients is purely speculative.

Mr. Tesh's figures for the fees to be charged for services at the clinic are also speculative. Mr. Tesh based his figures upon conversations with the plaintiff and with Dr. Sutton, a California internist. However, Dr. Sutton's figures are derived from a private practice in California, and do not estimate the cost of service in the Virgin Islands, or any other locale that is demographically or socio-economically similar to St. Croix. Such figures have no relevance in calculating the cost of services on St. Croix.

Mr. Tesh also estimates that plaintiff's rate of collection of fees will be 75 percent, however, he offers no basis for this conclusion. In fact, Lloyd Austin's report indicates that the collection rate of the St. Croix Hospital Emergency Room is nine percent. Plaintiff does not address this discrepancy, except to state that plaintiff has "confirmed" his own success in collecting from insured patients. With respect to factual predicates based on conversations with plaintiff, the *Benjamin* court found that reliance on the personal beliefs of the plaintiff as to his own capabilities is inappropriate because plaintiff's beliefs are purely speculative. *Benjamin,* 820 F.2d at 642. Thus, Mr. Tesh's figure is pure speculation and cannot refute Mr. Austin's figure that the collection rate is nine percent. The 75 percent collection figure does not form a credible factual predicate for Mr. Tesh's calculations of value.

Even if these factual predicates were sound, the feasibility of the project itself is highly questionable, making testimony as to its value inadmissible. An emergency facility would have required a certificate of need from the Department of Health of the Government of the Virgin Islands. Plaintiff now contends that the clinic would have been a mere extension of his private practice, and not a new venture as an emergency room that required licensing. Plaintiff contends that the feasibility of the clinic is established by his three year track record in private practice. The sudden shift in plaintiff's characterization of the clinic is surprising. Plaintiff has consistently characterized the facility as an alternative to the St. Croix Hospital Emergency Room. For example, plaintiff's wife's deposition indicates that he planned to open an emergency facility—not an office. Deposition of Patricia Phillips Abdulghani, at 19–20. The final pretrial order describes the project as a private urgent care/walk-in clinic that plaintiff initiated as a response to the deterioration of the Government Hospital emergency room. Pretrial Order at 3. Regardless of whether the clinic is properly characterized as an emergency facility, however, testimony regarding its value is inadmissible.

As noted above, an emergency facility would have required a certificate of need from the Department of Health of the Government of the Virgin Islands. Notwithstanding plaintiff's characterization of the clinic as a nonemergency facility, the deposition of Dr. Jacqueline Hoop establishes that the clinic still would have required a certificate of need that was unlikely to have been issued. On redirect examination, Dr. Hoop indicated that an office practice generally would not perform all the services proposed by the plaintiff for his clinic, thus her office would examine the practice to determine whether a certificate of need was necessary. Deposition of Jacqueline B. Hoop, at 51. Further, Dr. Hoop stated that the likelihood of licensing of a practice with the characteristics as described by the plaintiff would be less than 20 percent. *Id.* at 22. Thus, plaintiff's argument that feasibility is not an

issue because the venture is not a new business is not persuasive. The probability of the clinic's getting the proper licensing was less than 20 percent, making predictions of the clinic's success purely speculative.

Moreover, plaintiff had not taken adequate steps to execute his plan for the clinic to demonstrate it is more than just wishful thinking. Plaintiff never filed an application for a certificate of need to operate the clinic; he did not even request an application. Plaintiff did not enter contracts, sign leases, hire employees, or purchase equipment or supplies for the clinic. Plaintiff's negotiations and contact with other doctors were merely preliminary steps to establishing the feasibility of a business and do not establish that his plan for a clinic would have gotten off the ground. The plan to open a clinic, therefore, was no more than a speculative dream.

Additionally, plaintiff's argument that the clinic is merely an extension of a private practice, and not an emergency clinic or hospital that requires a certificate of need, is contrary to the evidence used by his expert in valuing that practice. Thus, even if the clinic were properly characterized as a nonemergency facility that did not require licensing, Mr. Tesh's testimony would be inadmissible. Mr. Tesh interviewed Dr. Sutton who, according to plaintiff's brief, has "extensive experience in emergency room care." Brief of Plaintiff in Response to Motion *in Limine*, at 6. Mr. Tesh read authoritative journals, including "Profile of Emergency Physicians," "Demographic Characteristics, Practice Patterns and Income" published in the Annals of Emergency Medicine, "Up Close Look at Emergency Medicine Specialists," and "Studies of Characteristics of American College of Emergency Physicians." *Id.* Mr. Tesh referred exclusively on data about emergency physicians and practice. The figures derived from such sources have no bearing here if the clinic, as plaintiff claims, were only an extension of his current practice.

Taken together, the faulty factual predicates and embryonic plans for the clinic do not establish a sufficient factual foundation as required by *Benjamin* to permit testimony as to the clinic's value. The figures used by Mr. Tesh to value the clinic were based on interviews with persons who were not in a position to give credible information concerning the number of potential patients or the amount and collection of fees. Regardless of whether the facility is an "emergency" facility, a certificate of need would have been required, and was unlikely to be forthcoming. The feasibility of the clinic is, therefore, highly questionable. Plaintiff took only the most preliminary steps in investigating the feasibility of the project. Even if the facility were properly characterized as an extension of plaintiff's current practice, the data used by Mr. Tesh in valuing the practice was derived exclusively from emergency practice, and is not a sufficient foundation for his testimony. Virgin Islands law recognizes that there is justifiable doubt as to the success of new and untried enterprises, and thus more specific evidence of their probable profits is required than when the claim is for harm to an established business. *See* 1 V.I.C. § 4 (Supp.1989); Restatement (Second) of Torts § 912 (1979). Plaintiff has not met this burden.

## III. CONCLUSION

This court finds that the factual foundation for Mr. Tesh's testimony is fatally flawed, and thus his testimony is inadmissible. The success of the clinic is also so speculative that testimony as to its value is meaningless. The court does not reach the issue that profits of a business are not equivalent to plaintiff's potential earnings, or that Mr. Tesh is not qualified to testify as an expert.

An appropriate order will be entered.