BANNIGAN v. WOODBURY.

1. NEGLIGENCE — EXECUTORS AND ADMINISTRATORS — HIGHWAYS AND STREETS.

Evidence tending to show that a pane of glass that was broken and fell from a building upon a pedestrian in the street had been badly broken upwards of a week previously, and that one corner had been loose and shaking, made the question of negligence on the part of the administrator, having in charge the building, a question of fact.

2. SAME—TRIAL—INSPECTION—CHARGE TO JURY.

Although the trial court in his charge confused the duty to inspect premises under the agent's control with the duty to repair after defects had become so notorious as to charge the agent with knowledge that the repairs were needed, it was not prejudicial error, in view of other instructions several times repeated to the jury that in order to charge defendant the defect must have existed for such a length of time that he ought to have discovered it.

3. SAME — DAMAGES — NERVOUS SHOCK — PERMANENT INJURIES — EVIDENCE.

The only evidence of permanent injury to plaintiff's nervous system being that she might suffer pain permanently from the contraction of tissue upon the ends of nerves, it was error to permit the jury to find damages for permanent injury to her nervous system.

4. SAME—CONDITION AFTER INJURY.

Testimony concerning the dilapidated condition of the windows on the day after the accident was competent.

Error to Kalamazoo; Knappen, J. Submitted April 11, 1911. (Docket No. 78.) Decided July 5, 1911.

Case by Kathryn Bannigan against Edward Woodbury, personally and as administrator of the estate of Jeremiah Woodbury, deceased. Daniel F. Altland as administrator of defendant was substituted as a party on defendant's decease. Judgment for plaintiff. Defendant brings error. Reversed.

*A. M. & C. H. Stearns (D. F. Altland,* of counsel), for appellant.

*Jackson & Fitzgerald,* for appellee.

BLAIR, J. This suit is brought for the purpose of recovering damages for personal injuries claimed to have been occasioned by the negligence of Edward Woodbury. Since the case was tried in the court below, Mr. Woodbury has died, and the case has been revived against D. F. Altland, administrator of Mr. Woodbury's estate. It is the claim of the plaintiff that the injury occurred by reason of a piece of glass falling from a building located on one of the principal streets in the city of Kalamazoo and striking the plaintiff's hat, and, glancing from the same, cut plaintiff's cheek. This action was not brought against Mr. Woodbury as the owner of the property in question, but against him as agent having control of this property at the time the accident occurred. The case has previously been before this court upon demurrer to the declaration and the demurrer overruled. *Bannigan* v. *Woodbury,* 158 Mich. 206 (122 N. W. 531, 133 Am. St. Rep. 371). At the conclusion of plaintiff's case, a motion was made by the attorneys for the defendant that a verdict be directed in his favor. This motion was denied. After the rendition of the verdict, a motion was made for a new trial, which was also denied, and to which exceptions were duly taken. Plaintiff recovered a verdict of $5,000, and defendant brings the record to this court for review upon writ of error. Counsel for defendant group their assignments of error under five heads, which we consider, so far as necessary to a disposition of the case, in their order.

1. The judgment of the court below should be reversed because there is no evidence in the case showing that this injury resulted from the negligence of defendant Edward Woodbury.

This proposition is predicated upon the testimony of a

witness for plaintiff, who was the only person who saw the glass fall. She testified, in substance, that she saw the pane of glass fall from the third-story window.

" I saw it a long time before that week. I saw that glass a good many times. I didn't take particular notice until about a week before.

"*Q.* Why didn't you take particular notice before that ?

"*A.* It was in there so bad it just kept cracking and breaking all the time."

She had seen the broken glass shake in the wind—

" And I was afraid it would fall out. I first noticed that the week before, but it kept getting worse, kept breaking. That is correct. I don't know how many days I noticed it during the last week. I couldn't say. I noticed it that once, and every time I would go up in the window I would look at that glass and see how badly it was broken. * * * It was broken right in the center —in the very center of it.

"*Q.* Right straight across ?

"*A.* Yes; there was pieces out of the center falling out. You could stick your hand through.

"*Q.* There was a crack across the center ?

"*A.* No, sir; a hole in the center of the window you could put your hand through, and the glass all around that cracked.

"*Q.* A hole as big as your hand in the center of the window ?

"*A.* Yes, sir.

"*Q.* The glass was all cracked around that hole ?

"*A.* Yes, sir; up on top and around the side, one corner was broken, that was the corner that fell, a large piece.

"*Q.* One corner of the glass was broken ?

"*A.* In that pane of glass.

"*Q.* So it looked as though some one had thrown a stone through it ?

"*A.* Yes, sir; that is the way it looked to me.

"*Q.* A base ball or something ?

"*A.* Yes, sir."

The testimony of this witness tends to support the allegations of the second count of the declaration that the said defendant—

" Allowed and permitted the said building and windows in the east end thereof to become out of repair, and to remain in a dilapidated, worn, and unsafe condition, in this, to wit: That on the east end on the third floor of said building were three windows; that the glass in said windows was cracked, broken, and insecurely fastened to the sash; * * * that it was great negligence * * * to permit and suffer said building and the windows therein and particularly the glass in said windows to remain in a dilapidated, worn, and unsafe condition, and to permit said glass to be left in said windows in the condition above set forth."

2. The court erred in his charge to the jury upon the question of the duty resting upon the defendant to make inspection of the building in question.

The circuit judge charged the jury upon this subject as follows: That it was necessary for plaintiff to show—

" That the cause of the glass falling was that the window had become out of repair in some way, so that the glass was loose and liable to fall, and that this. defect had existed for such a length of time that the defendant knew of it, or in the exercise of that care and prudence which a reasonably prudent person would have exercised under like circumstances he should have known it. * * * A man cannot close his eyes to conditions, and then excuse himself by claiming he did not know the conditions. If he could have known by a reasonable inspection, he is just as liable in an action for damages as he would be if he had actual knowledge. In other words, the term 'knowledge' or 'notice' may be either actual or constructive; that is, if the testimony had shown that Mr. Woodbury had personally seen the defects complained of in the declaration, before the accident occurred, that would be what is called actual notice. If he did not do that, if the evidence is silent upon that point, if you do not find by a preponderance of the evidence that he did, it would be your duty to consider whether he had, what is termed in the law, 'constructive notice;' that is, whether the property had been in such a state of dilapidation as is alleged in the declaration, and that those defects had existed for such a length of time as would naturally have caused a reasonably prudent and careful person to have observed it. If he did not use such prudence and that reasonable care, he would be chargeable under the law with

what is called in the law constructive notice, and would be just as liable, if you find that to be true, as though he had actually seen it.

" If you find from the evidence that the defendant was in charge of and in control of this building, either as administrator of the estate of Jeremiah P. Woodbury or individually, and you find that this glass which struck and injured the plaintiff, if it did, came from one of the windows of this building, and that said window was out of repair and the glass was loose, insecurely fastened and broken, and that this defect had existed for a sufficient length of time so that the defendant could, or should, in the exercise of reasonable diligence, have discovered the defect, then the plaintiff would be entitled to recover.

" In speaking of knowledge upon the part of the defendant in this case of the condition of this building necessary in order to make him liable, I do not necessarily mean actual knowledge. The law recognizes constructive knowledge as well as actual knowledge. And, if the defendant had constructive knowledge of the condition of the building, he would be just as chargeable with knowledge of the condition as he would be if he had actual knowledge. By ' constructive knowledge ' I mean this: That it is the duty of a person in charge of a building, located as the building in this case is, upon the public street, to make an inspection of the same, and if you find from the evidence in this case that the defendant could have found out the condition of the building by making a reasonable inspection of it—that is, such an inspection as a reasonably prudent person would have made, under like circumstances—then he would be just as chargeable with knowledge of the condition of the building as he would be if he had actual knowledge."

The judge repeatedly instructed the jury, in accordance with the theory of the declaration, that the defects must have existed a sufficient length of time to charge defendant with notice of them, and his last instruction was as follows:

" You will retire to your jury room and take up these propositions, I would suggest in the following order: * * * (3) Whether or not the cause of the glass falling was that the window had become out of repair in some way so that the glass was loose and liable to fall.

Then whether this defect had existed for such a length of time that the defendant knew of it, or in the exercise of that care and prudence that a reasonably prudent person would have exercised, in like circumstances, he should have known."

It was held when the case was here on demurrer that, if the defendant was lawfully in the possession of the building, "it would be his duty to keep it in a safe condition, so as to protect travelers along the streets. We think this duty on the part of defendant required of him the making of a reasonable inspection from time to time to ascertain its condition. *Connolly* v. *Investment Co.*, 130 Iowa, 633 (105 N. W. 400). , The declaration, however, does not allege a duty of inspection or a failure to perform that duty, but proceeds upon the theory that the defendant negligently permitted the windows to get out of repair, and with knowledge, actual or constructive, of their condition, permitted them to remain out of repair. The court appears to have somewhat confused the duty of inspection to ascertain whether repairs were required with the duty to repair after defects have become so notorious as to charge a person with knowledge that repairs are needed.    The brief does not, however, rest the argument upon the form of the declaration, but upon the general ground that an agent in charge of property is only liable for defects of which he has either actual or constructive knowledge, contending that the case is ruled by the case of *Thomas* v. *City of Flint*, 123 Mich. 10 (81 N. W. 936, 47 L. R. A. 499). Except for the form of the declaration, that case would have no application, and, in view of the repeated instructions of the court that the defect must have existed for such a length of time that the defendant ought to have discovered it, we do not think there was prejudicial error.

3 (*b*). The court erred upon the question of future damages in charging the jury as follows: "If you find the plaintiff in this case is entitled to recover, she is entitled to recover all damages which she has suffered up

to this time, and also for all damages which it is reasonably probable she will sustain in the future, not exceeding in all the amount claimed in the declaration, $15,000.''
Assignment of error No. 31.

The court also in various portions of his charge submitted to the jury the question as to whether or not the plaintiff was permanently injured, and especially whether her nervous system was permanently impaired. See Assignments of error 28, 29, 30, 31. The court charged the jury, amongst other things, in part as follows:

"The plaintiff also claims damages for physical pain and suffering and a nervous shock, both temporary and permanent, and with reference to such damages I instruct you that in the very nature of things these are elements of damage which are not susceptible of any exact computation. It is for the jury to determine the amount as their best, candid, and careful judgment should dictate. It is a power of necessity resting somewhere, and the law wisely gives that power to the jury to act upon their deliberate, conscientious judgment in determining what would be a fair compensation for the injury sustained. * * *

"If you find the plaintiff in this case is entitled to recover, she is entitled to recover all damages which she has suffered up to this time, and also for all damages which it is reasonably probable she will sustain in the future, not exceeding in all the amount claimed in the declaration, $15,000. * * * The injured party, when entitled to recover, should be awarded compensation for all injuries past and prospective, and these are intended to include and embrace indemnity for loss of time, if the plaintiff has lost any time thereby, for such expenses as she was put to and was personally liable for, also for all suffering, pain, loss of blood, inconvenience, humiliation, mental anguish, shock to the nervous system, disfigurement or permanent annoyance from the injury, provided these things are shown to be the result of the injury," etc.

We do not think there was sufficient evidence as to permanent "shock to the nervous system" to warrant submitting the question to the jury. While the testimony

may have warranted the submission of the question whether plaintiff would not suffer pain permanently from the contraction of tissue upon the ends of the nerves, we do not think it authorized an inference of permanent injury to the nervous system. The verdict was very liberal, and we cannot say that the element of prospective damages for permanent injury to the nervous system did not have an important influence upon the verdict.

4. The court erred in permitting testimony by various witnesses showing the condition of the window in question after the accident occurred, and also in permitting testimony upon the condition of other windows on the third floor of the building in question.

These witnesses testified to the dilapidated condition of the windows the day after the accident, and their testimony was plainly competent. *Williams* v. *City of Lansing*, 152 Mich. 169 (115 N. W. 961). In view of the conclusion we have reached, it is unnecessary to consider the question of excessive verdict.

The judgment is reversed, and a new trial ordered.

OSTRANDER, C. J., and BIRD, HOOKER, and STONE, JJ., concurred.