## Oliver Nowell & wife *vs.* John Wright.

A tender of a draw-bridge, appointed by the governor, with a salary, having full control and direction of the passing of all vessels through the draw, and of the opening of the draw and the care of the lamps upon the bridge, furnishing all necessary assistance therefor, whose duty it is to allow no unnecessary detention of vessels, having due regard and caution for the public travel, and who is required to give bonds to the treasurer of the Commonwealth for the faithful performance of his duties, is liable in damages to a person injured solely through his failure to have due regard and caution for the public travel in performing his duties.

In an action against the tender of a draw-bridge to recover damages sustained by reason of his neglect to have due regard and caution for the public travel in performing his duties, the opinion of the tender of another draw-bridge as to the necessity of keeping a gate shut and lanterns lighted while the draw is open in the night time, is inadmissible.

Tort to recover damages for injuries to the female plaintiff sustained by falling into Charles River in the night time, at the draw of Warren Bridge, through the negligence of the defendant, who was the tender of the draw-bridge, appointed under the provisions of *Sts.* 1859, *c.* 186, and 1856, *c.* 282, in not shutting the gates and hanging out lanterns while opening the draw.

At the trial in the superior court, before *Lord*, J., the plaintiff

introduced evidence tending to show that the accident occurred under the circumstances set forth; and then, in order to prove that it was the defendant's duty to shut the gates and hang out lanterns, called the tenders of other draw-bridges, who were allowed to testify, under objection, that in their opinion it is necessary, having due regard and caution for the public travel, to keep gates and shut them, and to hang out lanterns, while the draw is open in the night time.

The judge instructed the jury that the defendant was bound to have due regard and caution for the public travel, and to use such reasonable care as might be required for that purpose, while the draw was open, and that for any negligence in this respect he would be liable to any person injured solely through such negligence.

The jury returned a verdict for the plaintiffs, and the defendant alleged exceptions.

*M. G. Cobb*, for the defendant. The draw-tender is a servant of the Commonwealth. *Sts.* 1856, *c.* 282; 1859, *c.* 186. No action would lie against the Commonwealth. But if not against the Commonwealth, then not against the defendant, who is the Commonwealth's servant. Statutory provisions similar to those which prescribe the defendant's duties have been held to be not binding upon highway surveyors. *White* v. *Phillipston*, 10 Met. 110. *Bartlett* v. *Crozier*, 17 Johns. 450. *Lynn* v. *Adams*, 2 Carter, (Ind.) 143. *M'Kinnon* v. *Penson*, 9 Exch. 609. If the defendant was liable at all, it was on his bond. The opinions of other draw-tenders were incompetent.

*T. Willey*, for the plaintiffs.

DEWEY, J. It may be a delicate if not a difficult task, to mark with precision the line of discrimination between the various classes of public officers or agents created by statute and whose duties are defined by statute, who may be held responsible to individuals in an action on the case, for injuries esulting from the improper execution of their official duties. That many such officers and agents have been so held responsible, the adjudged cases abundantly show.

While admitting the general principle, Chancellor Kent, in

*Bartlett* v. *Crozier*, 17 Johns. 450, would confine the right of action to cases where the services of the officer are not gratuitous or coerced, but voluntary and attended with compensation; and also where the duty to be performed is entire, absolute and perfect. To this we may add that the duty should be a personal one, and not only one which he is under obligation, but clothed with ability, to perform, both in the means furnished to him, and the legal authority to act irrespective of superior officers,

Another element, also, when found to exist in a particular case, may be a controlling circumstance in respect to an agent, namely, that the act complained of was a misfeasance. This has sometimes been held to rebut a defence of agency, where the party would avoid a responsibility on the ground that he was a mere agent acting under a superior, as in *Bell* v. *Josselyn*, 3 Gray, 309.

In *Jones* v. *Bird*, 5 B. & Ald. 837, the commissioners of sewers were held responsible to a third person for an act done by them in the discharge of their duty as required by statute, it being found that they had acted carelessly and negligently, although if they had acted with due care, they would not have been responsible. In *Hall* v. *Smith*, 2 Bing. 156, while refusing to charge the defendants upon the facts there found, Best, C. J. says: " If commissioners under an act of parliament order something to be done· which is not within the scope of their authority, or are themselves guilty of negligence in doing that which they are empowered to do, they render themselves liable to an action, but they are not answerable for the misconduct of such as they are obliged to employ." In the case of *Schinotti* v. *Bumsted*, 6 T. R. 646, it was held that an action on the case lies against ministerial officers for a neglect of duty. The defendants in that case were the managers and directors of a lottery authorized by statute, and their duties were prescribed by statute. In the case of *Bartlett* v. *Crozier*, 15 Johns. 250, in an action by an individual against an overseer of highways for an injury sustained through want of repair thereof, the supreme court of New York held the broad doctrine that where an injury

is suffered by the act of a public officer contrary to his duty, the party injured may maintain an action on the case against the officer, and they accordingly rendered judgment against the defendant. That case was subsequently reversed by the court of errors, not because the principle above stated was wrong, but because in the case of overseers of highways there was no such responsibility attaching, they not being clothed with authority or charged with the absolute duty, required to charge them. 17 Johns. 450. A similar view with this was taken as to the case of a surveyor of highways in this commonwealth, and we suppose for like reasons it was held that he would not be liable to such an action at the suit of an individual. *White* v. *Phillipston*, 10 Met. 108.

It becomes necessary to ascertain the particular nature of the office or agency held by the defendant, and how far his personal responsibility attached in reference to the matter complained of, as occasioning an injury to the plaintiff.

This office is held under the provisions of *Sts.* 1856, *c.* 282, and 1859, *c.* 186, the latter of which modifies the former. It will be found that the office is not a mere honorary appointment for gratuitous service, but an office with a salary of eleven hundred dollars *per annum;* that the officer thus appointed has full control of the passing of all vessels through the draw of the bridge; that the statute requires that he shall furnish all the assistance necessary for opening and closing such draw, and for the performance of all the duties required of him; and that he shall have the care of the lamps upon the bridge, and perform all the labor necessary in lighting the same. In reference to this agency, so far as the proper opening of the draw was concerned, and all precautionary measures in relation thereto, it will be seen that the defendant had the exclusive management and direction. In the discharge of this duty he was not dependent upon the order of a superior, and the means were furnished to him adequate to the full discharge of his agency.

Under these circumstances, a personal liability attached to him for an injury to a third person caused by his improper discharge of his duties. His act was not a mere naked act of

nonfeasance. The opening the draw was the cause of the injury. That act was done by the defendant. It is true that it was lawful and proper to open the draw, but such opening was to be done in a proper manner. That required due regard and caution for the safety of travellers passing the bridge, and the use of reasonable safeguards for their protection. The defendant, by omitting to discharge his duty in this respect, may be held responsible for an injury occasioned thereby. In an action against him, as in all similar cases, the plaintiff must have been in the exercise of ordinary care and prudence on his part, before any claim for damages can be established.

That being shown, the jury were properly instructed that the defendant was bound to use reasonable care in reference to the safety of travellers passing over and upon the bridge while the draw was open, and for any negligence in this respect he would be liable to any person injured solely through such negligence.

To the rulings of the court as to the liability devolving upon the defendant, resulting from his holding and exercising the office of tender of the draw-bridge, we see no ground for exception.

Upon the other point presented by the bill of exceptions, namely, the admission of evidence of tenders of other draw-bridges, as to their opinions of the necessity of keeping gates shut, and hanging out lanterns for the proper protection of travellers, while the draw was open in the night time, we think the court erred; such evidence being liable to the same objection as was taken in *Raymond* v. *Lowell,* 6 Cush. 531, that it is merely the opinions of witnesses relative to the duty of the draw-tender. As to this point the exceptions must be sustained, if the defendant deems it useful to have another trial.