FRANK BOURGO *vs.* WILLIAM H. WHITE & others.

Suffolk.    March 15, 1893. — May 20, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Personal Injuries — Elevator — Statute.*

The St. of 1882, c. 208, amending the Pub. Sts. c. 104, § 14, and providing that "all elevator cabs or cars, whether used for freight or passengers, shall be provided with some suitable mechanical device, to be approved by" the inspectors of factories and public buildings, "whereby the cabs or cars will be securely held in the event of accident to the shipper rope, or hoisting machinery, or from any similar cause," requires that an elevator be provided with some suitable mechanical device, to be approved by the inspectors, designed for the purpose of securely holding the elevator in the event of an accident, and does not impose the duty of having such a mechanical device attached to the elevator as will surely and securely, under all circumstances, hold it in the event of an accident.

TORT, for personal injuries occasioned to the plaintiff on December 16, 1886, while employed in the defendants' tannery. Trial in the Superior Court, before *Sherman*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff testified that, in obedience to an order of his overseer, he brought boards upon the freight elevator from the second floor to the third floor of the tannery, and, having unloaded them, he got on the elevator and took hold of the shipper rope, and pulled upon it to have the elevator go down, but the elevator would not start; that he pulled down on it to go up, and when the elevator got near the next floor a gear on the elevator broke, and it fell; that he noticed the gear broken in halves after the accident; that there were two teeth broken, one on either side of the break in the gear, one being completely broken off, and the other partially so; that the break looked old; and that on one side of the broken tooth there were dirt and tannery material.

Evidence was introduced by the defendants tending to show that the plaintiff received no such order from his overseer as he testified to; that he had no right to be upon the elevator; that he had been repeatedly ordered off; that there was a notice

on the elevator that it was for freight only; and that the teeth were not broken before the accident.

One White, a witness for the defendants, testified that he was, and had been for many years, a State inspector of elevators; that he had inspected this elevator in March, 1886, as a State inspector, having been sent for by the defendants; that he then carefully tested it, and found it in good working order; that it was the same kind of freight elevator that was used in nine cases out of ten at that time; that it had all the safety catches and suitable mechanical devices on it that were known and in use at that time, and they worked all right; and that about that time there was an invention called a governor, which would securely hold an elevator in case the gear broke, but that this invention was not then used nor generally known.

Another witness testified that he found a blow-hole in the hub of the gear a little larger than a small key ring, and he saw this when he saw the gear broken; that it did not extend to the outside or inside of the hub, and it could not have been discovered before the accident by inspection; and that this blow-hole caused the gear to break.

The plaintiff asked the judge to rule that the defendants were bound to provide such an elevator, and have such safety catches on it, as would under any circumstances hold the elevator in case of the breaking of machinery or some similar cause; but the judge refused so to rule. The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*P. J. Hoar*, for the plaintiff.

*G. F. Richardson & G. A. Blaney*, (*S. Robinson* with them,) for the defendants.

FIELD, C. J. The exception in this case is founded upon St. 1882, c. 208, which amended Pub. Sts. c. 104, § 14, by adding these words: " All elevator cabs or cars, whether used for freight or passengers, shall be provided with some suitable mechanical device, to be approved by the said inspectors, whereby the cabs or cars will be securely held in the event of accident to the shipper rope, or hoisting machinery, or from any similar cause." The accident happened on December 16, 1886. The exceptions recite that " Mr. White, a witness for the defendants, said that he was, and had been for many years, a State inspector of eleva-

tors; that he had inspected this elevator in March, 1886, as a State inspector, having been sent for by the defendants; and that he then carefully tested it, and found it in good working order; that it was the same kind of freight elevator that was used in nine cases out of ten at that time; that it had all the safety catches and suitable mechanical devices on it that were known and in use at that time, and they worked all right; and that about that time there was an invention called a governor, which would securely hold an elevator in case the gear broke, but that this invention was not then used nor generally known."

The contention is, that St. 1882, c. 208, imposes on the defendants the duty of having such a mechanical device attached to the elevator as will surely and securely, under all circumstances, hold the cab in the event of an accident such as described in the statute. We think that this is not the meaning of the statute, but that the meaning is that the elevator is to be provided with some suitable mechanical device, to be approved by the State inspectors of factories and public buildings, designed for the purpose of securely holding the cab in the event of an accident. To construe the statute as the plaintiff contends might require the defendants to do what could not possibly be done. The statute did not intend that the defendants should be made insurers that the device would absolutely and perfectly perform its work under all circumstances; the intention was that they should procure a suitable device, to be approved by the State inspectors, and should see to it that it was kept in order. The words of the statute, " whereby the cabs or cars will be securely held in the event of accident," are intended to describe the nature and design of the device. It would require very clear language to create any such extraordinary responsibility as the plaintiff contends for, and the words of this statute are capable of a more reasonable construction.

*Exceptions overruled.*