EMMA L. BELLINGER, Appellant v. FANNIE F. COLLINS,
Appellee.

Construction Trusts: SALE BY AGENT: *Combination to defraud*
*vender*. Plaintiff's agent for the sale of her farm employed
the real estate firm of C. to assist in finding a purchaser. C.
offered the farm to S. to whom they represented themselves as
acting for plaintiff, and obtained an offer of $2,000 cash and a
town lot worth $2,000. The offer was communicated to the
agent, who told plaintiff that he had made a sale to S. for
$2,000 cash, but that S. wished the deed to show a consideraion
of $4,000; and plaintiff executed her deed accordingly, receiv-
ing the proceeds of the cash payment, and knowing nothing of
any further consideration, or of any other purchaser than S.
After the terms of sale had been agreed upon, but before S.
had paid anything, C. paid the agent on the purchase price
$150, which he claimed to have obtained from Ch., and the
balance of the cash payment was paid the agent by C. & Ch.
after the deal with S. had been finally closed. The town lot
was conveyed to C.'s wife, and thereafter the agent C. & Ch.
claimed that the farm had been sold to Ch. for $2,000, who in
turn had sold to S. for $2,000 and the lot, and that then Ch.
had sold the lot to C. *Held* that there was no such *bona fide*
sale of the farm to C. & Ch. or to either of them as would
prevent the town lot from being impressed with a trust in
favor of plaintiff.

RATIFICATION. The agent having told plaintiff the day before the
deal with S. was closed that others were helping him to sell
the farm, and having introduced to her C. and Ch., who in
her presence paid the balance of the cash payment to him, her
failure to object to her agent's acts in employing subagents
was a ratification of the acts of C. & Ch., which made C. &
Ch. her agents, and impressed the town lot with a trust for
her benefit.

GOOD FAITH BUYER. Where an agent for the sale of a farm sold it
in exchange for a cash sum and a town lot, and then, repre-
senting to his principal that the cash sum was the full consid-
eration, had the lot conveyed to his wife, who paid nothing
for it, the wife was not entitled to hold the property as against
the trust impressed thereon in favor of her husband's principal.

*Appeal from Pottawattamie District Court.*—HON. WALTER
I. SMITH, Judge,

THURSDAY, MAY 22, 1902.

THE plaintiff was the owner of a farm which she listed
for sale with the firm of Day & Hess, real estate agents of
Council Bluffs.    Collins & Childs was another firm of real
estate agents of the same city.    Day told Collins & Childs
that his firm had the Bellinger land for sale, and
Collins & Childs said they would try to find a cus-
tomer for it.    Soon after this the latter firm, through
Mr. Collins, who is the husband of the defendant herein,
entered into negotiations with one Smith for the sale of
the Bellinger land to him, which finally resulted in Smith's
agreeing to take it at $4,000, $2,000 of which was to be paid
in cash, and the balance by the conveyance of real estate
in Council Bluffs.    It was agreed, however, that there
should be deducted from the cash agreed to be paid a sum
equaling six per cent. on $2,000 for one year, because pos-
session of the farm could not then be given Smith.    Day
told Mrs. Bellinger that he had others assisting him in the
sale of her land, and both Collins and Childs told Smith
and his wife that they were making the sale for Mrs. Bel-
linger.    Smith did not deal with the firm of Day & Hess
in this matter at all.    After the terms of the sale had been
agreed upon, and a written memorandum thereof had been
signed by Smith, but before Smith had paid any money
thereon, Collins paid Day $150 on the purchase price of
the land, which money he says he received from Childs.
When the deal was finally close.l, Mrs. Bellinger was paid
$2,000 for her land, and was told by Day that he had sold
it for that sum.    She made a deed directly to Smith; the
consideration named therein being $4,000, which she was
told was at his request.    The Smith property was deeded
to the defendant Fannie F. Collins.    It is claimed by Day

and by Collins & Childs that Childs was in fact the pur-
chaser of the Bellinger land for $2,000, and that he in turn
sold it to Smith for $4,000, but that, as he did not want
any more city property, he agreed with Collins to deed it
to the defendant Fannie F. Collins in consideration of
Collins paying to him the sum of $250 for his share of the
profits in the deal.   The land deeded by Smith to the de-
fendant had two houses on it, and was worth from $1,500
to $2,000.   Mrs. Bellinger knew nothing of any pretended
sale of her land to Childs, or of the fact that Smith paid
more than $2,000 for it, until some time after the transac-
tion had been closed, and brought this action in equity,
asking that she be decreed to be the owner of the prop-
erty conveyed to the defendant, and that a conveyance
thereof be made to her.   Her petition was dismissed, and
she appeals.—*Reversed.*

*Jacob Sims* for appellant.

*Mayne & Hazelton* for appellee.

SHERWIN, J.—If the relation of principal and agent did
not exist between Mrs. Bellinger and the firm of Collins
& Childs as to the sale of her land, they would have owed
no duty to her which would have prevented either or both
from buying the land for speculation; and, in the absence
of a combination between them and Day & Hess to defraud
the plaintiff in the sale and purchase thereof, the title ac-
quired by this defendant would be good, and it could not
be impressed with a trust in favor of the plaintiff.   But
we are convinced that there was no *bona fide* sale of
the land to Collins & Childs, or to either of them.
Neither of them wanted the land; its value was un-
certain, depending upon the vagaries of the Missouri river;
while on the other hand, it is shown that Collins did want
the Smith property, which was conveyed to his wife.   That
Mr. Day knew the price that Smith was to pay for the land

before the claimed sale was made to Collins & Childs, we do not doubt; and, if he did, it was his duty to put his principal in possession of all the facts, instead of closing a deal whereby she was despoiled of nearly $2,C00. It is practically admitted that Collins & Childs undertook to find a purchaser for this land. True, this agreement was not made with Mrs. Bellinger, but with her agent, Day. In pursuance of this undertaking, they found Smith, and represented to him and to his wife, when his signature to the Smith property was obtained, that they were acting for Mrs. Bellinger. Mrs. Bellinger was told by Day, before the transaction was closed that others were helping him sell her land, and Collins & Childs were introduced to her, and in her presence paid over to Day the balance of the $2,000 in cash. She made no objection to the employment of subagents by Day, and her acts at that time should be deemed a ratification of such employment; and, while Day may have had no authority originally to employ subagents, neither he nor they can complain, if Mrs. Bellinger does not. The original employment of a subagent by express or implied authority of the principal would make the subagent the agent of the principal, and liable as such for his acts. Mechem, Agency, section 197. And the ratification of the acts of a subagent create the agency as surely as an original employment. We hold, therefore, that Collins & Childs were acting in conjunction with Day in the sale of the plaintiff's land, and that the land conveyed by Smith to Mrs. Collins belonged to the plaintiff, as a part of the price of her farm. Mrs. Collins paid nothing for the property deeded to her. Her husband caused the conveyance to be made to her, and the most that can be said in relation to the matter is that he was acting as her agent. In any view that may be taken of the matter, Mrs. Collins was not a *bona fide* purchaser entitled to protection. The property belonged to Mrs. Bellinger, and equity will impress a trust

thereon in her favor, just the same as if it had been deeded to Collins, and there can be no question that Collins would be held a trustee for Mrs. Bellinger's benefit.

The prayer of the petition is granted, and the judgment REVERSED.