# TIPPECANOE LOAN AND TRUST COMPANY *v.* JESTER.

[No. 21,718. Filed May 9, 1913. Rehearing denied October 31, 1913.]

1. CARRIERS.—*Passenger Elevators.—Landlord and Tenant.*—Where the entire building is not let to a single tenant, or where a part of the same is in control of the landlord, such landlord is, in the operation of a passenger elevator therein, a common carrier as to all persons having a right to use it, and the law imposes upon him a duty, which he cannot delegate so as to avoid liability, to exercise the highest degree of care with respect to such elevator. p. 364.

2. PRINCIPAL AND AGENT.—*Test of Agency.—Master and Servant.*—Ordinarily the test of agency, or master and servant, is that of authority to control, and liability for wages. p. 365.

3. PRINCIPAL AND AGENT.—*Negligence of Agent.—Liability of Agent to Third Persons.*—There is a privity in law by virtue of which every one in charge of property is under obligation

to so use it as not to injure another, so that, independent of and apart from liability arising from the contract of agency, one in control of property for the owner, is liable for a breach of such duty resulting in injury to any person to whom the duty was owing.   p. 366.

4. PRINCIPAL AND AGENT.—*Negligence of Agent.—Liability of Agent to Third Persons.*—An agent cannot be held liable to third persons for failure to perform his contractual obligations to his principal, but he is liable to third persons for injuries caused by his negligence, either of omission or commission, after he has undertaken performance, and the fact that his negligent conduct was in compliance with a direct order from his principal, will not protect him.   p. 370.

5. CARRIERS.—*Elevator Accident.—Contributory Negligence.—Complaint.*—A complaint, in an action for injuries in falling into the elevator shaft of an apartment house in which plaintiff resided, alleging that because of darkness plaintiff could not see beyond the door, that it was a custom known to her for the door to be open only when the car was in position, and that, being acquainted with the surroundings, and finding the door open, she entered and fell to the bottom of the shaft, was sufficient against the objection that its averments show that plaintiff was guilty of contributory negligence, since the fact that the elevator door was open, if not an invitation to enter, was not a warning of danger that would render plaintiff's entering an act of negligence.   (*Cincinnati, etc., R. Co.* v. *Peters* (1881), 80 Ind. 168, distinguished.)   p. 371.

6. PRINCIPAL AND AGENT.—*Relation.—Subagents.*—Where the owner of a building knows from its character and location that the business of managing it cannot be transacted by the primary agent, and knows that a subagent has been employed, such subagent is deemed the agent of the principal, and the rule is also applicable as to persons employed by him within the scope of his power.   p. 374.

7. TRIAL.—*Interrogatories to Jury.*—An interrogatory to the jury calling for more than one distinct fact or which calls for a pure finding of law, is objectionable.   p. 375.

8. CARRIERS.—*Passenger Elevators.—Care Required.*—While one, as a common carrier in the operation of a passenger elevator is required to exercise the highest care consistent with the operation of the elevator, he is not an insurer.   p. 375.

9. CARRIERS.—*Passenger Elevators.—Care Required.—Instructions.*—An instruction that one operating a passenger elevator in an apartment house is charged with the duty of keeping it in safe condition, is erroneous in that it makes such person an insurer.   p. 376.

10. CARRIERS.—*Passenger Elevators.—Contributory Negligence.—Jury Question.*—An instruction that a tenant of an apartment house, "in going to her room from the street is not required to look at every place where she steps," is in effect a statement that she would not be required to look under any circumstances, and invades the province of the jury, since it is for the jury to determine whether plaintiff, who was acquainted with the surroundings and knew the custom of the place to leave the elevator door open only when the car was in position, in going to her room, exercised ordinary care in walking through the open doorway of an elevator shaft at a time when it was dark and she could not see beyond such doorway. p. 377.

11. TRIAL.—*Instructions.—Credibility of Witnesses.*—An instruction on the credibility of witnesses, stating that the jury "must take into consideration the interest, the appearance upon the witness stand, the bias or prejudice of the witness if any be shown, is calculated to unduly impress upon the minds of the jurors that the judge has in mind some suspicion regarding the evidence of some witnesses. p. 378.

From Superior Court of Tippecanoe County; *James P. Wason*, Special Judge.

Action by Ella M. Jester against the Tippecanoe Loan and Trust Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Will R. Wood*, for appellant.

*George P. Haywood* and *Charles A. Burnett*, for appellee.

MYERS, C. J.—This was an action for damages for personal injuries sustained by appellee by falling down an elevator shaft in an apartment house known as Columbia Flats in the city of Lafayette. The action was originally brought against appellant as agent, George Mohr, day elevator boy at the building, and John W. Barr, Jr., and Henry W. Barret, owners of the building, as trustees. The action was dismissed as to Mohr, and the court sustained a plea in abatement by Barr and Barret for want of jurisdiction over their persons. The amended complaint upon which the cause went to trial, alleges that Barr and Barret on December 28, 1904, and for two years prior thereto, were and had ever since been the owners of the grounds and building known as

Columbia Flats, in the city of Lafayette, a four-story build-
ing used as an apartment house for rooms and residences;
and for part of the time as a restaurant; that it was used by
many persons and families as tenants of Barret and Barr,
who, on December 28, 1904, and for more than two years
prior, and ever since have been and are nonresidents of the
State of Indiana, and were running and operating such
building through the appellant trust company as their agent;
that at that time, and ever since, the trust company was
their agent in the management, control and operation of the
business, and as such agent had full charge and complete
control of the management and operation of the business;
that it employed all the employes and servants engaged in
and about the building who were engaged in the care and
control thereof, rented the rooms and apartments, looked
after and had charge of the making of, and it was its duty to
make all repairs to the building, and the different parts
thereof, and had charge of the heating, and the janitor work
in the building, procuring coal and supplies necessary for
the conduct of the business, and the management of the
building generally; that as such agent it had not only the
right, authority and power to engage and employ all em-
ployes and servants used in and about the building and
premises, but had the absolute right and authority to dis-
charge said servants, and had complete control over the con-
duct of their work.   Then follows a description of the con-
struction and manner of operating an elevator in the build-
ing for the transportation of the tenants, and all persons
having business therein, to and from the several floors of
the building.   It is alleged that the trust company was
charged with the duty of making all necessary repairs, not
only to the building, but particularly to the elevator and
the doors thereof, and all things connected therewith, so as
to render occupancy comfortable, convenient, and its use
safe for the tenants thereof, and all persons using the same,
and that the trust company held itself out to the plaintiff,

and to the other occupants of the building as having charge of the keeping in safe repair and condition the building and elevator, and entrances to the latter, and all things connected therewith; that plaintiff knew that the trust company was agent for the owners, and had the control and management and charge of the business, and had charge of the repairs to the building and the elevator, and that it was its duty to keep it in repair, and everything connected therewith, and to keep it in safe condition for the use of the plaintiff and others, and that she relied upon it to do so, and that it knew she so relied; that the use and operation of the elevator and the frequent closing and opening of the door thereto into the hallway leading thereto caused the catch on the door to become loose, and also caused a small bolt that helped hold in position the catch on the jamb of the door to become loose and fall out, and thereby the catch became loose, and the latch would not and did not go into the slot of the catch and hold the door when it should be kept closed; that this catch was loose and out of repair for several days prior to December 28, 1904, which fact the company knew, or by reasonable diligence could have known in time to have repaired it prior to that day.    It is also alleged that the lock, latch and catch had been out of repair as aforesaid for several weeks prior to the injury, and that the defendants knew, or by the use of ordinary diligence and care, could have known, that it was so out of repair and in a dangerous condition, and that appellee did not know it.    That the defendants carelessly and negligently permitted the lock, latch and catch of the elevator door to be and remain out of repair as aforesaid, and to be in a dangerous and unsafe condition, so that when the door was closed the latch would not and did not fasten in the catch, or slot, and hold the door closed, but on account of the defective condition of said lock, latch and catch, as aforesaid, the door would rebound, and roll back, and open, and remain open after the elevator had ascended, thus leaving the elevator door open, through

which any person was likely to step, and fall into the elevator shaft, but of which dangerous condition plaintiff had no knowledge, and that the defendants carelessly and negligently continued to run, operate, and use the elevator from the time the door became out of repair as aforesaid until the time of the accident. That in the operation and running of the elevator it was the custom and duty of the defendants to keep the door to the elevator closed when the elevator was not at the floor where the door of the elevator was situated, and that it was the custom of defendants to have the door to the elevator open when the elevator was in position at such door, to receive passengers, of which custom plaintiff was aware. That appellee with her husband resided as tenants on the second floor of the building, and had done so for some time, and rented the apartments occupied by them through the trust company as agent. That during all said time, and on December 28, 1904, a main entrance to the building ran from the street, fifteen or twenty feet to the door of the elevator. That there was provided a gaslight fixture, or lamp, in the ceiling of the hallway, a few feet from the door to the elevator, and another smaller fixture or lamp on the opposite side of, and near the elevator door. That December 28, 1904, was a cloudy, dark day at 4:30 p. m., and that the aforesaid lamps were not lighted, and the hallway and elevator shaft were dark and unlighted. That on said day at about 4:30 p. m. the defendants, by and through the elevator boy, who had been employed by the trust company to operate the elevator, caused the elevator to ascend from its position on the main floor of the building to one of the upper floors, and as the elevator started said boy attempted to close the door, and after the elevator had left the main floor, on account of the aforesaid defective condition of the lock, latch and catch, it failed to fasten, when closed, but rebounded, and rolled back, and opened, and stood open, thus leaving the door into the elevator shaft open, through which door anyone was likely to step and fall into the shaft.

That at about 4:30 p. m. of said day plaintiff, who was familiar with the hallway and elevator, and the entrance to the latter through the said door, and the custom of the defendants to have the door open when the elevator was in position at the hallway to receive passengers, and the custom to have it closed when the elevator was ascending from, or descending to the floor at the hallway, entered the hallway from the street, carefully approached the elevator door and saw the elevator door open, but because of the darkness was unable to see beyond the elevator door. That the door was not in position, and she did not know that the elevator was not in position opposite the door, or that the elevator shaft was open and exposed, and because the door was open and exposed, and believing the elevator to be in position, with due care, she stepped through the door for the purpose of stepping into the elevator to be carried to the floor of her apartment, and because the elevator was not there, and the shaft was open and exposed, she fell to the bottom of the shaft, a distance of about ten feet, and was greatly injured, the injuries being minutely described, by reason of which aforesaid negligence of the defendants she was injured without fault on her part.

A demurrer for want of facts sufficient to constitute a cause of action was unsuccessfully interposed by appellant to this complaint, and the ruling is challenged here. The objection made to the complaint is, (1) that as it appears from the complaint that appellant was an agent only, and that the charge of negligence is one of nonfeasance, and not of misfeasance, that for an act of nonfeasance, an agent is not liable to third persons; (2) that the complaint affirmatively shows contributory negligence on the part of appellee.

It is to be regretted that there is such a divergence of opinion on the first proposition in the American courts. The cases are largely collected on both sides of the question in 2 Am. and Eng. Ency. Law and Pr. 1160 *et seq.,* and in

note to *Ellis* v. *Southern R. Co.* (1905), 2 L. R. A. (N. S.) 378.

Where the entire premises are not let to a single tenant, or where a part of the premises are in control of the landlord, as to maintenance, or operation and repair, 1. in respect of the agency, or conditions which give rise to injury, as for instance, a general entrance to a *quasi*-public building, or entries and stairways, or water closets for general use, or a passenger elevator for common or general use, the owners of buildings in which passenger elevators are operated are regarded as common carriers, as to those in the rightful use of the building, or for whom they are provided. *McGrell* v. *Buffalo, etc., Bldg. Co.* (1897), 153 N. Y. 265, 47 N. E. 305; *Bourgo* v. *White* (1893), 159 Mass. 216, 34 N. E. 191; *Griffen* v. *Manice* (1901), 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. 630; *Bogendoerfer* v. *Jacobs* (1904), 97 App. Div. (N. Y.) 355, 89 N. Y. Supp. 1051; *Stewart* v. *Harvard College* (1866), 94 Mass. (12 Allen) 58; *Ellis* v. *Waldron* (1896), 19 R. I. 369, 33 Atl. 869; *Kentucky Hotel Co.* v. *Camp* (1895), 97 Ky. 424, 30 S. W. 1010; *Hartford Deposit Co.* v. *Sollitt* (1898), 172 Ill. 222, 50 N. E. 178, 64 Am. St. 35; *Ohio Valley Trust Co.* v. *Wernke* (1908), 42 Ind. App. 326, 84 N. E. 999; *Marker* v. *Mitchell* (1893), 54 Fed. 637; *Mitchell* v. *Marker* (1894), 62 Fed. 139, 10 C. C. A. 306, 25 L. R. A. 33; *Goodsell* v. *Taylor* (1889), 41 Minn. 207, 42 N. W. 873, 4 L. R. A. 673, 16 Am. St. 700; *Treadwell* v. *Whittier* (1889), 80 Cal. 574, 22 Pac. 266, 13 Am. St. 175, 5 L. R. A. 498; *Springer* v. *Ford* (1901), 189 Ill. 430, 59 N. E. 953, 52 L. R. A. 930, 82 Am. St. 464, and cases cited; *Luckel* v. *Century Bldg. Co.* (1903), 177 Mo. 608, 76 S. W. 1035. In such cases it is the landlord's duty to keep the premises and appliances, over which he exerts control, in a reasonably safe condition for use, and as to elevators to exercise the highest care, as a duty owing by law, to third persons who have a right to their use, or for whom they are pro-

vided. *Domenicis* v. *Fleisher* (1907), 195 Mass. 281, 81 N. E. 191; *Andrews* v. *Williamson* (1906), 193 Mass. 92, 78 N. E. 737, 118 Am. St. 452; *Looney* v. *McLean* (1880), 129 Mass. 33, 37 Am. Rep. 295; *Readman* v. *Conway* (1879), 126 Mass. 374; *Miller* v. *Hancock* (1893), 2 Q. B. 177; *Hargroves* v. *Hartopp* (1905), 1 K. B. 472; *McMartin* v. *Hannay* (1872), 10 Ct. of Sess. Cas. 3d Ser. (Can.) 411; *Griffen* v. *Manice, supra; Bogendoerfer* v. *Jacobs, supra; Stewart* v. *Harvard College, supra; Ellis* v. *Waldron, supra; Springer* v. *Ford, supra,* and cases there cited. This landlord's duty he cannot delegate and escape liability himself for injury arising from negligence of that care required of common carriers of passengers. *Connolly* v. *Des Moines Invest. Co.* (1906), 130 Iowa 633, 105 N. W. 400. It appears from the complaint that appellant was employed by the owners, with full authority of management and control, with authority to make repairs and to hire and discharge employes, but there is no allegation showing whether appellant was to receive a sum from which it hired and paid the employes in running the business, or whether they were paid from the funds of the owners. From the character of the undertaking, and the allegations of the complaint, it is clear that it was known, or implied, by the owners that appellant would operate through others, and that it was authorized to do so, either on its own account, or on the owners' account. Ordinarily the test of agency, or master and servant, is that of authority to control, and liability for wages. *Bently, Shriver & Co.* v. *Edwards* (1905), 100 Md. 652, 60 Atl. 283; see note to *Hardy* v. *Shedden Co.* (1897), 78 Fed. 610, 24 C. C. A. 261, 37 L. R. A. 33; *Sacker* v. *Waddell* (1903), 98 Md. 43, 56 Atl. 399, 103 Am. St. 374; *Driscoll* v. *Towle* (1902), 181 Mass. 416, 63 N. E. 922. So far as the complaint discloses, that authority was vested in appellant.

But the question still remains, *Is* the agent liable? Much of the disagreement among the decided cases seems to have arisen from attempts, and perhaps success, in distinguishing

between acts of nonfeasance and misfeasance, and in

3. the application of the rule that for an act of nonfeasance an agent is only liable to his principal upon the ground of the lack of privity between him and third persons, and holding the agent only for misfeasance. We shall not attempt to cite the cases, for they are very numerous.. The real ground, as we see it, for the application, or nonapplication of the rule, as to liability, is not one of agency, but a question of the duty imposed by general principles of law, upon the owner, or those in control of property for him, to so use or manage the property as not to injure the property of another, by its negligent use, or to injure the person of another who is where he has a right to be, or is in the use of property for which use he pays. There is a privity in law, by virtue of which everyone in charge of property is under obligation to so use it as not to injure another. It is a duty imposed by law, it is true, but privity arises from the obligation to those in a situation to insist upon its respect, and the neglect of performance, must in order to render the agent liable, be neglect of performance of a duty which he owes third persons, independent of and apart from the agency, which arises from contract. The distinction is pointed out in *Dean* v. *Brock* (1894), 11 Ind. App. 507, 510, 38 N. E. 829, upon which appellant relies, supported by *Osborne* v. *Morgan* (1881), 130 Mass. 102, 39 Am. Rep. 437. In the latter case it is said, "And it is doubtless true that if an agent never does anything towards carrying out his contract with his principal, but wholly omits and neglects to do so, the principal is the only person who can maintain any action against him for nonfeasance. But if the agent once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons which may be the natural consequence of his acts; and he cannot, by abandoning its execution midway and leaving things in a dangerous condition,

exempt himself from liability to any person who suffers injury by reason of his having so left them without proper safeguards. This is not nonfeasance, or doing nothing; but it is misfeasance, doing improperly.'' The court later says, ''The plaintiff's action is not founded on any contract, but is an action of tort for injuries which, according to the common experience of mankind, were a natural consequence of the defendant's negligence. The fact that a wrongful act is a breach of a contract between the wrongdoer and one person, does not exempt him from the responsibility for it as a tort to a third person injured thereby.'' Citing cases.

Under the first branch of that case as cited in *Dean* v. *Brock, supra,* the question would resolve itself into the inquiry as to what is the particular work undertaken. Was it the general management and control of the building, in which was included the care of the elevator, or was it only the specific matter of the care of the elevator, which was undertaken and neglected? In 1 Shearman & Redfield, Negligence (5th ed.) §243, after stating the general rule as to nonliability of agents as such, for acts of nonfeasance, and citing *Dean* v. *Brock, supra,* it is said in the note, ''But where premises owned by a nonresident are placed in the hands of a resident real estate agent, with authority to make repairs, lease, etc., and the agent permits such premises to become dangerous for want of repairs, he will be liable to any person who is injured by such dangerous condition of the premises.'' Citing *Baird* v. *Shipman* (1890), 132 Ill. 16, 23 N. E. 384, 7 L. R. A. 128, 22 Am. St. 504, affirming *Baird* v. *Shipman* (1889), 33 Ill. App. 503. In Clark & Skyles, Agency §594, after stating the general rule of nonliability of agents to third persons so far as contractual relations are concerned, it is stated in §595, ''But where an agent is guilty of misfeasance, that is, where he has actually entered upon the performance of his duties to his principal, and in doing so, fails to respect the rights of others, by doing some wrong, whether it is a wrong of omission or a wrong of commis-

sion, as where he fails or neglects to use reasonable care and diligence in the performance of his duties, he will be personally responsible to a third person who is injured by reason of such misfeasance,'' citing many cases, and continuing: ''The agent's liability in such cases is not based upon the ground of agency, but on the ground that he is a wrongdoer, and as such, js responsible for the injury he may cause. * * * It is not 'his contract with his principal which exposes him to or protects him from liability to third persons, but his common law obligation to so use that which he controls, as not to injure another.'' In §596 are drawn, to our minds very satisfactory definitions of, and distinctions between nonfeasance, misfeasance, and malfeasance. ''A servant is personally liable to third persons when his wrongful act is the direct and proximate cause of the injury, whether such wrongful act be one of nonfeasance, or misfeasance.'' 6 Cur. Law. 605. See, also, note to *Baird v. Shipman* (1890), 22 Am. St. 504; note to *Mayor v. Thompson-Hutchison Bldg. Co.* (1894), 28 L. R. A. 433, 1 Va. L. Reg. 780, note; *Ward v. Pullman Car Corp.* (1908), 131 Ky. 142, 114 S. W. 754, 25 L. R. A. (N. S.) 343; *Bannigan v. Woodbury* (1909), 158 Mich. 206, 122 N. W. 531, 133 Am. St. 371, and note; *Carter & Harris v. Atlantic, etc., R. Co.* (1909), 84 S. C. 546, 66 S. E. 997; *Henney v. Lane* (1894), 9 Tex. Civ. App. 150, 36 S. W. 1063; *Nowell v. Wright* (1861), 85 Mass. (3 Allen) 166, 80 Am. Dec. 62; *Campbell v. Portland Sugar Co.* (1873), 62 Me. 552, 16 Am. Rep. 503; *Ferrier v. Trepannier* (1895), 24 Can. S. Ct. 86; *Bannigan v. Woodbury* (1911), 166 Mich. 491, 132 N. W. 77; *Greenberg v. Whitcomb Lumber Co.* (1895), 90 Wis. 225, 63 N. W. 93, 28 L. R. A. 439, 48 Am. St. 911; Huffcut, Agency (2d ed.) §§212, 291. In 1 Jaggard, Torts §98, the question is discussed, and liability is held to exist irrespective of agency, by virtue of common law duty to third persons. The note refers to the like doctrine and distinction as laid down by Mechem, Agency §572, and Wharton, Negligence (2d ed.)

§535, where the latter declares that the distinction "between nonfeasance and misfeasance can no longer be sustained." 2 Am. and Eng. Ency. Pl. and Pr. 1161-1164, and notes; *Horner* v. *Lawrence* (1874), 37 N. J. L. 46; *Consolidated Gas Co.* v. *Conner* (1910), 114 Md. 140, 78 Atl. 725, 32 L. R. A. (N. S.) 809; *Hagerty* v. *Montana, etc., Co.* (1908), 38 Mont. 69, 98 Pac. 643, 25 L. R. A. (N. S.) 356; *Carson* v. *Quinn* (1907), 127 Mo. App. 525, 105 S. W. 1088; *Harriman* v. *Stowe* (1874), 57 Mo. 93; *Southern R. Co.* v. *Rowe* (1907), 2 Ga. App. 557, 59 S. E. 462; *Stiewel* v. *Borman* (1896), 63 Ark. 30, 37 S. W. 404; *Ellis* v. *McNaughton* (1889), 76 Mich. 237, 42 N. W. 1113, 15 Am. St. 308. In *Lough* v. *Davis & Co.* (1902), 30 Wash. 204, 70 Pac. 491, 59 L. R. A. 802, 94 Am. St. 848, and note, is a careful review of some of the leading cases upon the question of liability of agents to third persons for nonfeasance. In *Orcutt* v. *Century Bldg. Co.* (1907), 201 Mo. 424, 99 S. W. 1062, 8 L. R. A. (N. S.) 929, the plaintiff was injured as the result of the failure of an agent in charge of the building, having its leasing and control, to keep the elevator in repair, and it was there said, "When it undertook the management of this building from its principal, it undertook to do for the principal a particular work, and after it had entered upon the performance of that work, any act which it did, whether by omission or commission, was misfeasance." "An agent, however, like every other person, is bound in the course of the discharge of his duty to his principal, to exercise a due regard for the rights and privileges of others. If he fails in this duty and by his wilful act or by his negligent conduct, inflicts an injury upon a third person, he is liable to that person in the same manner as though he were not an agent." Mechem, Agency §540. "Misfeasance may involve, also, to some extent the idea of not doing, as where the agent while engaged in the performance of his undertaking does not do something which it was his duty to do

under the circumstances,—does not take that precaution, does not exercise that care,—which a due regard for the rights of others requires. All this is not doing, but it is not the not doing of that which is imposed upon the agent merely by virtue of his relation but of that which is imposed upon him by law, as a responsible individual, in common with other members of society. It is the same not-doing which constitutes actionable negligence in any relation.'' Mechem, Agency §572. In *Bell* v. *Josselyn* (1855), 69 Mass. (3 Gray) 309, 63 Am. Dec. 741, an agent was held liable, the court saying, ''As the facts are, the nonfeasance caused the act done to be a misfeasance. But from what did the plaintiff suffer? Clearly from the act done, which was no less a misfeasance by reason of its being preceded by a nonfeasance.''

In the case at bar, even upon the theory of an agent not being liable for nonfeasance, but for misfeasance or malfeasance only, the nonfeasance was not inspecting or not keeping the elevator apparatus in repair, and the misfeasance in causing it to be operated in that condition. If the distinction above noted is kept clearly in mind by the court, and nonfeasance held to apply only to cases where the agent fails to enter upon the performance of his contractual obligations, and not to cases where he has entered upon such performance, but neglected his duties in some respects, the confusion would not arise. 1 Jaggard, Torts §98 and note.

4. That is to say, that for failure to perform his contractual obligations to his principal, a third person can not hold him liable, but for negligence of omission or commission, after he has undertaken performance, he is liable under common law rules. The violation of a duty giving rise to injury and a cause of action, arises as much, and as frequently from omission to do a thing which ought to be done in the discharge of his duty to his principal, nonfeasance, as in doing it in the discharge of that duty, in such a manner as to injure another, misfeasance.

A direct order from the principal would not protect the agent in omitting to discharge a positive duty owing to third persons, "For the warrant of no man, not even the King, can excuse the doing of an illegal act; for although the commanders are trespassers, so also are the persons who did the act." *Sands* v. *Child* (1694), 3 Lev. *352. From these considerations, taking the allegations of the complaint as made, we conclude that the complaint is not open to objection as insufficient because of appellant being an agent.

The second reason assigned by appellant why its demurrer to the complaint should have been sustained is, that the facts stated in said paragraph show contributory 5. negligence on the part of appellee. It is contended that appellant was negligent in not ascertaining that the elevator was in place before she stepped through the door. The main case relied upon in support of this view is *Cincinnati, etc., R. Co.* v. *Peters* (1881), 80 Ind. 168. In that case the plaintiff was injured by stepping from a train. The train had slowed up, the conductor informed the plaintiff that this was his destination, and told him to get off. It was dark, and he was unacquainted with the place, and could not see where he would alight when he stepped off, but supposed that there was a platform. There was no platform and he was thrown under the cars and injured. The judge who wrote the opinion held that the complaint showed contributory negligence on the part of the plaintiff in stepping off the train in the darkness, with no knowledge of whether it was a suitable place to alight. However, there was one dissenting opinion, and two of the other judges concurred in the result, on the ground that the complaint did not aver that there was no fault on the part of plaintiff.

In *Cleveland, etc., R. Co.* v. *Lynn* (1909), 171 Ind. 589, 85 N. E. 999, 86 N. E. 1017, it is said, "So long as the facts stated do not force the legal conclusion that there was contributory fault, the averment that there was no such fault entitles the plaintiff to have it submitted to the jury as a

question of fact, whether there was such negligence." In this complaint it is alleged, though unnecessary by virtue of the statute, that plaintiff was without fault, and the facts stated do not necessarily force the conclusion of contributory negligence. Appellee knew that it was the custom to leave the elevator door open, only when the car was in place; though it was not lighted, she was acquainted with the surroundings, in which this case is distinguishable from the Peters case. It is possible, and probable, that if she had looked more closely she could have seen that the car was not there.

The case of *Rhodius* v. *Johnson* (1900), 24 Ind. App. 401, 56 N. E. 942, establishes the law that a person is not required to exercise the same degree of caution before proceeding into a place where no danger is to be anticipated, that is required upon going into a place of known danger. It is said in that case, "The open doorway, if not an invitation to enter, was certainly not a warning of danger. What is due care must depend on the circumstances." Carriers of passengers by elevator being common carriers, must exercise the highest degree of care, both in providing, and in managing them. *Ohio Valley Trust Co.* v. *Wernke* (1908), 42 Ind. App. 326, 84 N. E. 999; *Ohio Valley Trust Co.* v. *Wernke* (1913), 179 Ind. 49, 99 N. E. 734; *Goodsell* v. *Taylor, supra; Marker* v. *Mitchell, supra; Treadwell* v. *Whittier, supra; Orcutt* v. *Century Bldg. Co., supra; Luckel* v. *Century Bldg. Co., supra;* 1 Thompson, Negligence (2d ed.) §1078; White's Supp. Thompson, Negligence §1078; Ray, Negligence 308; 1 Thompson, Forms 1001 and note. And it has been held that the public are authorized to enter an open door of an elevator, apparently at rest. *Blackwell* v. *O'Gorman Co.* (1901), 22 R. I. 638, 49 Atl. 28; *Edwards* v. *Manufacturers Bldg. Co.* (1905), 27 R. I. 248, 61 Atl. 646, 2 L. R. A. (N. S.) 744 and note, 114 Am. St. 37, 8 Ann. Cas. 974. Also that an invitation to enter arises from an attendant open-

ing a door to an elevator. *Fisher* v. *Cook* (1887), 23 Ill.
App. 621; *Phillips* v. *Pruitt* (1904), 83 S. W. 114; *Sheyer*
v. *Lowell* (1901), 134 Cal. 357, 66 Pac. 307; *Colorado, etc.,*
*Co.* v. *Rees* (1895), 21 Colo. 435, 42 Pac. 42; *Tousey* v.
*Roberts* (1889), 114 N. Y. 312, 21 N. E. 399, 11 Am. St.
665. In this last case, where the same insistence was made
as here, as to the duty of appellee to see that the car was
at the door it is said, ''An elevator for the carriage of per-
sons is not, like a railroad crossing at a highway, supposed
to be a place of danger, to be approached with great caution;
but, on the contrary, it may be assumed, when the door is
thrown open by an attendant, to be a place which may be
safely entered without stopping to look, listen or make a
special examination.'' In view of the allegation that it was
a custom known to appellee that the door was only open
when the car was at the door, the question of appellee's
contributory negligence was one clearly for the jury. The
court did not err in its ruling on the demurrer to the com-
plaint.

Appellant next contends that the court erred in overrul-
ing its motion for judgment on the interrogatories. Sev-
eral interrogatories are complained of, because they present
more than one question, and because they call for conclu-
sions, instead of facts. It is insisted that if these inter-
rogatories are not considered, the special finding is con-
tradictory of the general verdict. Appellant bases this
contention on two grounds. (1) That one of the material
allegations of the complaint is that appellant was operating
the elevator; that eliminating the objectionable interroga-
tories, the remaining ones show that Mohr, the elevator boy,
was the agent of Barret and Barr, and not of appellant;
that therefore Barret and Barr were operating the eleva-
tor through their agent Mohr, and that appellee has failed
to establish one of the material allegations of the complaint.
(2) That the remaining interrogatories show that appel-
lant had never actually undertaken to repair the elevator,

and that appellant is not liable to third parties injured by reason of its failure to perform this duty. The second contention is answered by our holding in the previous part of the opinion. As to the first contention, the complaint alleges that appellee was injured through the negligence of appellant in permitting the latch to get out of repair, and in using and operating the elevator after it became out of repair. It is alleged that appellant assumed the management and operation of the elevator. The gist of the charge against appellant is, that it undertook the management of the building, and negligently allowed the latch to become and remain out of repair. It was found that appellant had sole and complete control and management of the building, and keeping it in repair, and it followed that it could have stopped the operation of the elevator at any time, or could have repaired it, or discharged the boy. It found that the owners were residents of Kentucky, and that appellant was the agent of the Fidelity Trust Company of Louisville, Kentucky, which latter was the direct agent of the owners with whom appellant had no contract, but that the owners knew of, and assented to the appointment of appellant by the Kentucky company; that appellant was authorized to make repairs without consulting the Kentucky company or the owners; that the expense of these repairs, as well as the expense of running the building, including the wages of employes, were deducted from the monthly receipts from the building, and the balance transmitted to the Kentucky company, and no part was taken for the compensation of appellant as managing agent, or paid by it from its funds. These findings inject into the controversy the additional element of subagency, a feature which has received no consideration by counsel in their briefs. Where, however, as here, the owner knows from its character and location that the business cannot be transacted by the primary agent, and also knows of the fact of the employ ment of a subagent, the latter is none the less the agent of

the principal, and this would also apply to the employes of the subagent within the scope of his powers. *Olifiers* v. *Belmont* (1895), 12 Misc. 160, 33 N. Y. Supp. 275; *Murphy* v. *Emigration Commissioners* (1863), 28 N. Y. 134; *Bingaman* v. *Hickman* (1887), 115 Pa. St. 420, 8 Atl. 644; *Buckland* v. *Conway* (1820), 16 Mass. 396; *Peries* v. *Aycinena* (1841), 3 W. & S. (Pa.) 64; *Bellinger* v. *Collins* (1902), 117 Iowa 173, 90 N. W. 609; *Groscup* v. *Downey* (1907), 105 Md. 273, 65 Atl. 930.

There are however other interrogatories and answers which disclose the theory upon which the verdict of the jury rests, which while not sufficient to entitle appellant to judgment in its favor, cannot be ignored. One is as follows: "Was the Tippecanoe Loan and Trust Company as agent, in charge and control of said building as an apartment house for the use and benefit of the owners, and was said defendant as such agent, charged with the duty of keeping said building in *safe repair and free from danger?*" (our italics) and the jury answered, "Yes." The interrogatory is objectionable because it calls for more than one distinct fact, but assuming that the first fact is found in other interrogatories, the second finding presents a pure finding of law. Neither appellant nor the owners were insurers, and while they as common carriers by the elevator, were required to exercise the highest care consistent with the operation of the elevator, the question and answer travel upon the theory that they are insurers. Another interrogatory and answer finds that it was appellant's duty to "keep the elevator, the door, and the fixtures thereto in proper repair, in *safe condition and free from danger,*" here again they are held as insurers, and the law is not so. *Louisville, etc., Trac. Co.* v. *Korbe* (1911), 175 Ind. 450, 453, 456, 93 N. E. 5, 94 N. E. 768, and cases there cited.

One of the instructions given the jury was that if it found that appellant was charged with the duty of keeping the

elevator, and the premises about the elevator in a *safe* condition for those who used, and had a right to use such elevator, and it negligently failed to keep such elevator, and the latch and catch to the door in proper repair, so that the place became unsafe and dangerous, "in consequence of which the plaintiff was injured * * * and you find all the other material facts in the case in favor of the plaintiff * * * then you may find for the plaintiff," etc. It will thus be seen that this instruction also travels upon the theory of appellant being required to keep the elevator and premises safe, that is become an insurer, and in no instruction pointed out, is it shown that the jury was instructed as to what the legal duty of appellant was, as being required to exercise the highest degree of care consistent with the practical operation of the elevator, though such an instruction would be inconsistent with the former and it is clear from the interrogatories and answers, that the jury was instructed upon an erroneous theory as to that point, and that its finding was not only a conclusion, but one of law, erroneously found.

Another instruction informs the jury that a tenant in an apartment house in going to her room from the street is not required to look at every place she steps. She has a right to rely upon the owners and those in exclusive charge of an apartment house to keep the premises in a *reasonably safe condition* for those invited upon them, and who have a right to be there. Which instruction was the jury to be guided by? Judging from the interrogatories and answers they were guided by the erroneous ones. Other interrogatories present double, or two or more questions of fact; others present mixed questions of fact and law, as for example, whether defendant knew, or had reason to know of the unsafe condition of the latch or catch. *Town of Newcastle* v. *Grubbs* (1908), 171 Ind. 482, 494, 86 N. E. 757. However, taking the interrogatories and answers as a whole, they do not warrant a judgment for appellant as against the general verdict.

The instruction last quoted is attacked as being an invasion of the province of the jury in informing them that "a tenant in going to her room from the street is not 10. required to look at every place where she steps," on the ground that it was a question for the jury whether she was required to look, and whether she was guilty of contributory negligence. The instruction is too broad even as applied to the facts in the case. The fact that it was somewhat dark in the hallway, and at the elevator door, even though appellee knew the surroundings, and the custom as to the door being open only when the elevator was at the door, and closed when it was not, would not of themselves excuse ordinary care on her part, but these were proper elements in determining whether she did under the circumstances and surroundings, use ordinary care, and whether she did was a question of fact, and whether she should have looked before she stepped, or what degree of care she should have employed under the circumstances was a question for the jury. It cannot be said as a matter of law that a person is not required to look under any circumstances, which is the effect of the instruction. In some places, and under some circumstances, it might be true as a matter of law, that one is not required to look at every place where he steps; in others such care might be required, but what care is required under the particular circumstances and surroundings, is a question for the jury. The rule is well stated in *Pennsylvania Co.* v. *Hensil* (1880), 70 Ind. 569, 575, 36 Am. Rep. 188, "It is only when the circumstances of a case are such that the standard of duty is fixed and certain, or when the measure of duty is defined by law and is the same under all circumstances, or when the negligence is so clearly defined and palpable that no verdict could make it otherwise, that the court is authorized to make the question of negligence one of law, and not of fact." The same thing must necessarily be true, as to the question of contributory negligence. In support of the instruction it is urged that

there is no conflict in the evidence as to how appellee was injured so far as her actions were involved, but the court cannot say as a matter of law that all fair-minded men must honestly draw the same conclusion as to whether she was negligent in not discovering the absence of the elevator. The jury did draw that conclusion here, but under the instruction which informed it that to some extent she was under no requirement to look where she stepped, and it cannot be justified. *Indianapolis St. R. Co.* v. *Marschke* (1906), 166 Ind. 490, 77 N. E. 945; *Malott* v. *Hawkins* (1902), 159 Ind. 127, 63 N. E. 308; *Greenawaldt* v. *Lake Shore, etc., R. Co.* (1905), 165 Ind. 219, 74 N. E. 1081; *Young* v. *Citizens St. R. Co.* (1897), 148 Ind. 54, 44 N. E. 927, 47 N. E. 142; *Board, etc.* v. *Bonebrake* (1896), 146 Ind. 311, 45 N. E. 470; *Cleveland, etc., R. Co.* v. *Moneyhun* (1896), 146 Ind. 147, 44 N. E. 1106, 34 L. R. A. 141; *Prothero* v. *Citizens St. R. Co.* (1893), 134 Ind. 431, 33 N. E. 765; *Pennsylvania Co.* v. *Horton* (1892), 132 Ind. 189, 31 N. E. 45; *Cincinnati, etc., R. Co.* v. *Howard* (1890), 124 Ind. 280, 24 N. E. 892, 8 L. R. A. 593, 19 Am. St. 96; *Louisville, etc., R. Co.* v. *Falvey* (1886), 104 Ind. 409, 3 N. E. 389, 4 N. E. 908; *Union Mut. Life Ins. Co.* v. *Buchanan* (1885), 100 Ind. 63; *Cleveland, etc., R. Co.* v. *Schneider* (1907), 40 Ind. App. 38, 80 N. E. 985; *Van Winkle* v. *New York, etc., R. Co.* (1905), 34 Ind. App. 476, 73 N. E. 157; *Rhodius* v. *Johnson* (1900), 24 Ind. App. 401, 56 N. E. 942.

In another instruction the court instructed that in determining the credibility of witnesses and the weight of their testimony "they *must* take into consideration the interest, the appearance upon the witness stand, the bias or prejudice of the witness if any be shown." This instruction is attacked also as invading the province of the jury. Such an instruction is not to be commended for the reason that it is calculated to unduly impress upon the minds of jurors, that the judge has in mind some sus-

picion regarding the evidence of some witnesses, even though the jury should, and must necessarily, in its deliberations, take those matters into consideration, and in earlier cases in this court judgments were reversed for less directory statements in instructions, but the rule seems to have been greatly relaxed in many later cases. The reason for the relaxed rule being given, that there is a wide distinction between consideration of the evidence, and the weight to be given it, and that in its deliberations it is the duty of the jury to consider all the evidence admitted, and that *must*, in such case only implies duty to consider it, the weight being another matter. *Indianapolis St. R. Co.* v. *Johnson* (1904), 163 Ind. 518, 526, 72 N. E. 571; *Toledo, etc., R. Co.* v. *Fenstermaker* (1904), 163 Ind. 534, 540, 72 N. E. 561; *Fifer* v. *Ritter* (1902), 159 Ind. 8, 11, 64 N. E. 463; *Smith* v. *State* (1895), 142 Ind. 288, 293, 41 N. E. 595; *Deal* v. *State* (1895), 140 Ind. 354, 368, 39 N. E. 930; *In re Darrow* (1910), 175 Ind. 44, 92 N. E. 369; *Southern R. Co.* v. *State* (1905), 165 Ind. 613, 621, 75 N. E. 272; *Strebin* v. *Lavengood* (1904), 163 Ind. 478, 71 N. E. 494; *Keesier* v. *State* (1900), 154 Ind. 242, 56 N. E. 232; *Newport* v. *State* (1895), 140 Ind. 299, 303, 39 N. E. 926.

Other questions are sought to be reviewed as to the admission and rejection of evidence, but the questions are not presented for the reason that appellant expressly states in its brief that it sets out only those urged here, and these questions argued are not among those set out. Neither were the questions, or objections, or answers, set out. Complaint is made of other instructions given which we need not recur to, for the reason that they are not likely to be again given. Instructions requested by appellant and refused proceed upon the theory of appellant as to the insufficiency of the complaint, and were properly refused, for the reasons pointed out as to the sufficiency of the complaint.

For the errors in instructions, the judgment must be re-

versed, and it is so ordered, with instructions to the court below to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 101 N. E 915. See, also, under (1) 6 Cyc. 535, 596; (2) 31 Cyc. 1193; (3) 29 Cyc. 476; (4) 31 Cyc. 1560; (5) 29 Cyc. 578, 579; (6) 31 Cyc. 1427; (7) 38 Cyc. 1916; (8, 9) 6 Cyc. 590, 596; (10) 29 Cyc. 653; (11) 38 Cyc. 1727. As to the liability of the proprietor of an elevator for injury to a person other than a passenger, see Ann. Cas. 1912 D 531. On the general question of liability for injury to elevator passenger, see 25 L. R. A. 33; 2 L. R. A. (N. S.) 744; 56 Am. St. 806. As to the liability for condition of elevator to tenant of part of premises, see 23 L. R. A. 155. As to contributory negligence in stepping into elevator shaft through open door, see 2 L. R. A. (N. S.) 757; 24 L. R. A. (N. S.) 246.